# FOR PUBLICATION



**FILED**

Dec 20 2013, 6:11 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**WILLIAM VAN DER POL, JR.**
Martinsville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

RICHARD E. SIMMONS,                )
                                   )
    Appellant-Defendant,           )
                                   )
        vs.                     )    No. 55A01-1209-CR-444
                                   )
STATE OF INDIANA,                  )
                                   )
    Appellee-Plaintiff.            )

APPEAL FROM THE MORGAN CIRCUIT COURT
The Honorable Matthew G. Hanson, Judge
Cause No. 55C01-1111-FA-1450

**December 20, 2013**

**OPINION – FOR PUBLICATION**

**MAY, Judge**

Richard Simmons was convicted of four counts of Class A felony attempted murder,[1] two counts of Class D felony criminal recklessness while armed with a deadly weapon,[2] and one count each of Class D felony unlawful use of body armor[3] and Class A misdemeanor possession of marijuana[4] after he shot at police officers who were trying to serve an arrest warrant on him. He argues he was entitled to a directed verdict on the attempted murder counts[5] because there was no evidence he knew police officers were behind the wall at which he fired shots. Simmons also argues the jury was not properly instructed on the presumption of innocence and his sentence was inappropriate.

We affirm.[6]

## FACTS AND PROCEDURAL HISTORY

On October 16, 2011, thirteen police officers went to a residence where Simmons was staying in order to serve arrest warrants. Simmons was in the basement, which had a separate living area. The owner of the residence consented to a search and pounded on the basement door yelling that police were present. Officers approached the basement and then knocked and announced: "Police, warrant, get on the ground and make yourself known." (Tr. at 515.)

---

[1] Ind. Code § 35-41-5-1 (attempt); Ind. Code § 35-42-1-1 (murder).

[2] Ind. Code § 35-42-2-2.

[3] Ind. Code § 35-47-5-13.

[4] Ind. Code § 35-48-4-11.

[5] Simmons does not contest his convictions of possession of marijuana and unlawful use of body armor.

[6] We heard oral argument October 7, 2013, at the Randall T. Shepard Academy for Law and Social Justice in Evansville. We thank the Academy for its hospitality and commend counsel on the quality of their oral advocacy.

The police called out "search warrant" and "arrest warrant," and each officer announced which agency he was from. (*Id*. at 614.) One officer called Simmons by name and told him to come out and "resolve this if you're in there." (*Id*. at 593.) An officer entered the hallway of the living area with a police dog and loudly announced: "Come out or I'm going to release my dog." (*Id*. at 519.) As other officers searched the various rooms in the living area, one encountered Simmons in the laundry room, where he was crouched behind the water heater. The officer was startled and left the laundry room to tell the other officers where Simmons was. The officers formed a "tactical stack"[7] against the outside of the laundry room wall. The officers told Simmons several times to come out of the room, but he did not. One officer was in the doorway holding a shield. He was three or four feet away from Simmons. Another officer was kneeling at the left side of the doorway, with an officer behind him. The lighting was poor but both officers could see Simmons. Simmons' hand was concealed, which suggested to the officers that Simmons was armed.

An officer moved into the laundry room and used a Taser, but it did not make solid contact with Simmons and did not immobilize him. Simmons pulled out a handgun and fired it twice. One officer fired two shots back, then Simmons fired a "barrage," (*id*. at 912), of gunfire at the officers at the side of the doorway. He then continued firing through the drywall "like following [the officers] down the hallway," (*id*. at 960), as they retreated.

---

[7] One officer testified a "tactical stack" is "where you line up directly behind the person in, in close proximity where you can actually touch the person's shoulder in front of you." (Tr. at 515.)

3

Simmons left the laundry room and entered a bedroom across the hall. The State Police SWAT Team arrived, took charge of the situation, and negotiated with Simmons by phone for over an hour. After those negotiations failed, the Johnson County SWAT Team entered the basement and launched a gas canister toward Simmons. Simmons fired a number of shots at those officers, but he surrendered after officers launched three more gas canisters.

At his trial, Simmons tendered a preliminary instruction about the presumption of innocence:

> Under the law of this state, a person charged with a crime is presumed to be innocent. This presumption continues in favor of the accused throughout the trial of this cause. To overcome the presumption of innocence, the State must prove the Defendant guilty of each essential element of the crime charged, beyond a reasonable doubt.
> The Defendant is not required to present any evidence to prove his innocence or to prove or explain anything.
> You should attempt to fit the evidence to the presumption that the Defendant is innocent.
> If the evidence in this case is susceptible to two (2) constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the Defendant, and the other to his innocence, it is your duty, under the law to adopt that interpretation which is consistent with the Defendant's innocence, and reject that which points to his guilt.

(App. at 264.)

The trial court declined to give Simmons' tendered instruction. Instead, after a discussion with counsel, it modified one of its preliminary instructions to include language that the presumption of innocence "continues in favor of the accused throughout the trial of this cause." (Tr. at 183.) When final instructions were discussed, Simmons again tendered his preliminary instruction number one and the trial court declined to give it on the ground its

4

content was covered by the other preliminary and final instructions.

At the close of the State's case, Simmons moved for a directed verdict on all the counts of attempted murder.[8] He argued the State had presented no evidence of Simmons' specific intent because he was accused of shooting at officers he could not see or because his shots were directed away from them. Simmons' motion was denied.

A jury found Simmons guilty of four counts of attempted murder, two counts of criminal recklessness while armed with a deadly weapon, and one count each of unlawful use of body armor and possession of marijuana. The trial court sentenced him to thirty-three years for each attempted murder count, two years for each count of criminal recklessness and unlawful use of body armor, and six months for possession of marijuana. The court ordered the attempted murder sentences be served consecutively, while the sentences for the other four counts were to be served concurrent with the attempted murder sentences for an aggregate sentence of 132 years.

### DISCUSSION AND DECISION

1.    Directed Verdicts[9]

Simmons argues he was entitled to directed verdicts on three of the attempted murder

---

[8] Simmons was charged with six counts and found guilty of four. On appeal, he challenges only three counts.

[9] In order for a trial court to grant a motion for a directed verdict, there must be a total lack of evidence on an essential element of the crime or the evidence must be without conflict and susceptible to only an inference in favor of the defendant's innocence. *Guy v. State*, 678 N.E.2d 1130, 1134 (Ind. Ct. App. 1997), *disapproved on other grounds by Abney v. State*, 821 N.E.2d 375 (Ind. 2005). If the evidence is sufficient to sustain a conviction on appeal, then the denial of a motion for a directed verdict could not be error. *Id.* The State need only present a *prima facie* case in order to avoid an adverse directed verdict. *Hollowell v. State*, 707 N.E.2d 1014, 1019 (Ind. Ct. App. 1999).

counts because there was no evidence he knew police officers, specifically Officers Stevenson, Bartlett, and Katt,[10] were behind the wall at which he shot. However, as the State notes, Simmons presented evidence after the court denied his motions for directed verdict, so he has waived review of the denial. *See*, *e.g.*, *Croy v. State*, 953 N.E.2d 660, 662 (Ind. Ct. App. 2011) (defendant who elects to present evidence after a denial of motion for directed verdict made at the end of the State's case waives appellate review of the denial of that motion), *reh'g denied*. In this situation, we review Simmons' claim as a challenge to the sufficiency of the evidence.[11] *Id.*

When reviewing sufficiency of evidence, we do not reweigh evidence or reassess credibility of witnesses; rather, we consider only the evidence favorable to the verdict and reasonable inferences to be drawn from that evidence. *Hollowell v. State*, 707 N.E.2d 1014, 1019 (Ind. Ct. App. 1999). If there is substantial evidence of probative value to support the conclusions of the trier of fact, we will affirm the conviction. *Id.* In this case, there was sufficient evidence to support the convictions.

---

[10] Simmons concedes he might have been in a position to be aware of the officers stationed in the doorway, but the three named officers were apparently in the "tactical stack" in the hallway and not visible at the door The State argues the "evidence is sufficient to support Simmons' convictions for [sic] the attempted murders of Officers *Clarke*, Bartlett, Stevenson, and Katt." (Br. of Appellee at 27) (emphasis added). But Simmons does not appear to be making any such argument as to Officer Clarke. Instead, Simmons explicitly concedes he could have seen Clarke or at least have been aware of his presence. (Br. of Appellant at 10.)

[11] To avoid an adverse directed verdict, the State need only present a *prima facie* case. *Hollowell v. State*, 707 N.E.2d 1014, 1019 (Ind. Ct. App. 1999). Thus, if the evidence is sufficient to sustain a conviction on appeal, the denial of a motion for a directed verdict could not be error. *Guy v. State*, 678 N.E.2d 1130, 1134 (Ind. Ct. App. 1997), *disapproved on other grounds by Abney v. State*, 821 N.E.2d 375 (Ind. 2005).

A conviction of attempted murder requires proof of a specific intent to kill. *Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008). Because intent is a mental state, intent to kill may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or serious injury. *Id*. Firing a gun in the direction of an individual is substantial evidence from which a jury may infer intent to kill. *Id*.

In *Henley*, Police stopped Henley's car, and Henley ran away. Using a police dog, officers tracked Henley to a van. When the dog entered the van, Henley began shooting and killed the dog. Our Supreme Court found there was no evidence Henley knew police officers were present when he fired his weapon. The officer testified that, not knowing Henley was in the van, he gave "no commands at all." *Id*. "[T]he most relevant evidence concerning Henley's intent to kill came from Officer Molinet's testimony that he 'heard a pop, and pop, pop, pop, and saw three more muzzle flashes just coming back at both of us, you know, me and [the police dog].'" *Id*. The officer testified, however that he could not see Henley because it was too dark in the van. The *Henley* Court found that record "simply devoid of any probative evidence that Henley was pointing his firearm at Officer Molinet when he fired the weapon. We are compelled to conclude that Henley's intent to kill Officer Molinet was not established beyond a reasonable doubt." *Id*. at 653.[12]

---

[12] Simmons asserts there was not enough evidence to establish Henley's intent to kill the officer even though there was evidence Henley knew the officer was present. That evidence, Simmons says, was that "the officers were in hot pursuit of Henley. They were pursuing him with the dog. The dog was tethered to the officer. It seems pretty apparent that Henley was aware officers were present." (Br. of Appellant at 11.) As noted above, our Supreme Court explicitly found to the contrary: "There was no evidence presented that Henley was aware of the police presence when he fired his weapon." *Henley*, 881 N.E.2d at 652.

7

Simmons, unlike Henley, knew there were a number of police officers in the direction he was shooting, even if they were not visible to him. Simmons concedes it is "arguable" that he "was in a position to be aware of the officers deployed in the doorway," (Br. of Appellant at 11), but asserts there was no evidence he was aware of the officers hidden and deployed to the right of the doorway. Simmons characterizes as "the best evidence," (*id*.), that he could not have seen the officers pass to the right of the doorway because he was hidden out of sight behind a water heater. However, we may not consider the "best evidence" from Simmons' perspective. *See Olive v. State*, 696 N.E.2d 381, 382 (Ind. 1998) (in reviewing for sufficiency of evidence, we consider only the facts favorable to the judgment and do not assume that other evidence, even if arguably unrefuted, is necessarily credible).

The available evidence permitted the jury to infer Simmons was aware of the officers behind the drywall even if he could not see all of them. In *Champlain v. State*, 681 N.E.2d 696 (Ind. 1997), Champlain asserted there was insufficient evidence he knowingly killed the victim. We noted testimony that Champlain fired into a trailer home at close range aware that the victim was inside. "[The victim's] voice could have permitted Champlain to form a conclusion as to her location even if visibility was blocked by the door." *Id*. at 703. The jury could have concluded from that evidence that Champlain "knowingly" killed the victim. *Id*. at 702-03.

When the thirteen officers first approached the basement where Simmons was hiding, they knocked and announced: "Police, warrant, get on the ground and make yourself known."

8

(Tr. at 515.) The police called out "search warrant" and "arrest warrant," and each officer announced which agency he represented. (*Id*. at 614.) One officer called Simmons by name and told him to come out and "resolve this if you're in there." (*Id*. at 593.)

After one officer encountered Simmons in the laundry room, other officers formed a "tactical stack" against the outside of the laundry room wall. Simmons conceded "when they were in the laundry room, there was [sic] three or four of them that came in." (Ex. 344a at 16.) The officers told Simmons several times to come out of the room, but he did not: "There was [sic] several voice commands from several officers." (Tr. at 1176.) Officers Bartlett, Stevenson, and Katt were lined up behind Officer Clarke, who was kneeling at the left side of the laundry room doorway and who could see Simmons. Officer Bartlett testified he could see Simmons, and Officer Bartlett and Simmons exchanged words for about five minutes. As there was ample evidence from which the jury could infer Simmons knew there were at least four officers behind the wall he shot at, there was sufficient evidence to convict Simmons of four counts of attempted murder.

2.    Jury Instructions

The manner of instructing a jury is left to the sound discretion of the trial court. *Albores v. State*, 987 N.E.2d 98, 99 (Ind. Ct. App. 2013). We review the trial court's decision only for an abuse of that discretion. *Id.* On review of a decision not to give a proposed jury instruction, we consider whether the instruction (1) correctly states the law, (2) is supported by the evidence, and (3) is covered in substance by other instructions that are given. *Id.* We consider jury instructions as a whole and in reference to each other and do not

9

reverse unless the instructions as a whole mislead the jury as to the law in the case. *Id.* Even if an instruction is a correct statement of the law and finds support in the evidence, a trial court may in its discretion decline to give it if its substance is covered by other instructions. *Id.*

Simmons' trial court did not abuse its discretion by declining Simmons' tendered instruction on the presumption of innocence. The tendered instruction included the statement: "Under the law of this state, a person charged with a crime is presumed to be innocent. This presumption continues in favor of the accused throughout the trial of this cause." (App. at 264.) That instruction, Simmons asserts, "contained the mandatory language concerning the fact that the presumption of innocence continues throughout the trial. . . . This court has found that upon request of the defendant, the count [sic] must include this language." (Br. of Appellant at 7-8.)

Simmons relies on *Lee v. State*, 964 N.E.2d 859 (Ind. Ct. App. 2012), *trans. denied*, where we found the jury was not adequately instructed on the presumption of innocence. We noted an instruction that "advises the jury that the presumption of innocence prevails until the close of the trial . . . must be given if requested." *Id.* at 864.

In fact, Simmons' jury was so instructed, at least at the beginning of his trial. Simmons does not acknowledge in his brief[13] that preliminary instruction number fourteen

---

[13] Simmons did not submit a reply brief.

included this language: "This presumption [of innocence] continues in favor of the accused throughout the trial of this cause." (App. at 207.) The court again instructed the jury in its final instructions about the presumption of innocence, but the final instructions did not include the specific language that the presumption of innocence continues throughout the trial.

It was not an abuse of discretion to so instruct the jury only in the preliminary instructions and not again in the final instructions, as other final instructions adequately conveyed to the jury the concept that the presumption of innocence continues throughout the trial. In final instruction number 28, the jury was told "You should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth." (App. at 171.) As it is "throughout the trial" that the jury receives evidence, the instruction that it should try to fit the evidence to the presumption of Simmons' innocence covered, in substance, the instruction that the presumption continues throughout the trial. There was no abuse of discretion. *See Albores*, 987 N.E.2d at 99 (no abuse of discretion if rejected tendered instruction is duplicative of other instructions given by the trial court).

3.    Sentence

Simmons concedes the trial court could impose consecutive sentences for the four counts of attempted murder, but argues the imposition of consecutive sentences, resulting in an aggregate sentence of 132 years was inappropriate in light of the trial court's statement that the aggravating circumstances "only slightly" outweighed the mitigators. (Tr. at 2351.)

11

Sentencing decisions rest within the sound discretion of the trial court and will be disturbed only on a showing of an abuse of discretion. *Anderson v. State*, 989 N.E.2d 823, 826 (Ind. Ct. App. 2013), *trans. denied*. An abuse of discretion occurs when the decision is clearly against the logic and effect of the evidence before the court or the reasonable inferences to be drawn therefrom. *Id*.

Ind. Appellate Rule 7(B) empowers us to independently review and revise sentences authorized by statute if, after due consideration, we find the trial court's decision inappropriate in light of the nature of the offense and the character of the offender. *Id*. at 827. The "nature of offense" compares the defendant's actions with the required showing to sustain a conviction under the charged offense, *id*., while the "character of the offender" permits broader consideration of the defendant's character. *Id*. An appellant bears the burden of showing both prongs of the inquiry favor revision of the sentence. *Id*.

Simmons does not explicitly address any facts relevant to his character or the nature of his offense. Instead, he notes the trial court characterized the sentence for each Class A felony count, thirty-three years, as "only marginally above the advisory sentences,"[14] (Tr. At 2351 but it then ordered them to run consecutively for an effective sentence of 132 years. Using "the exact same set of circumstances" to impose sentences close to the advisory for individual counts but then ordering the individual sentences to be served consecutively was, Simmons asserts without citation to authority, a "completely . . . illogical conclusion." (Br. of Appellant at 14.) He also notes "the effective sentence imposed for shooting at an officer

---

[14] The advisory sentence for a Class A felony is thirty years. Ind. Code § 35-50-2-4.

in the doorway was the same as [the sentence imposed for shooting] one Simmons could not have even known existed." (*Id.*)

Simmons' inappropriateness argument is waived because he did not make any argument the sentence was inappropriate in light of his character. *See Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008) (revision of a sentence under Indiana Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of *both* the nature of his offenses and his character).

The waiver notwithstanding, consecutive sentences were appropriate because there were multiple victims. Whether the counts involve one or multiple victims is highly relevant to the decision to impose consecutive sentences. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). That is because "when the perpetrator commits the same offense against two victims, enhanced and consecutive sentences seem necessary to vindicate the fact that there were separate harms and separate acts against more than one person." *Serino v. State*, 798 N.E.2d 852, 857 (Ind. 2003).

We have upheld consecutive sentences where, as here, there are multiple victims of attempted murder. *See, e.g., Fernbach v. State*, 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011), *trans. denied*. Fernbach's sentencing court imposed advisory sentences for two counts of attempted murder and ordered them to run consecutively. "There were two victims, both of whom suffered serious injuries as a result of being shot by Fernbach. Thus, we cannot say that the trial court's decision to impose consecutive sentences was inappropriate." *Id.* In

13

light of Simmons' multiple victims, the order that his sentences would be served consecutively did not render his total sentence inappropriate.

## CONCLUSION

There was ample evidence to convict Simmons of attempted murder, his jury was adequately instructed on the presumption he was innocent, and his consecutive sentences were appropriate. We accordingly affirm.

Affirmed.

PYLE, J., conurs.

SHEPARD, Sr. J., concurring with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

RICHARD E. SIMMONS,     )
             )
  Appellant-Defendant,   )
             )
     vs.       )  No.  55A01-1209-CR-44
             )
STATE OF INDIANA,     )
             )
  Appellee-Plaintiff.    )
             )

**Shepard, Senior Judge, concurring.**

When it came time for final instructions, Simmons tendered a charge that Indiana judges have been giving to juries in criminal cases for at least 120 years:

> Under the law of this state, a person charged with a crime is presumed to be innocent. This presumption continues in favor of the accused throughout the trial of this cause.  You should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth.

The court declined Simmons' request and gave instead a similar instruction tendered by the prosecution.  While the two were much the same, the State's version did not contain the second of the three ideas embodied in the standard instruction; it omitted the language about "continues in favor of the accused throughout the trial."  It's not clear that anyone noticed this difference at the time.

As the panel's opinion indicates, Simmons relies on cases like *Lee v. State*, 964 N.E.2d 859, and *Alborez v. State*, 987 N.E.2d 98, in arguing that a trial court errs when it refuses an instruction containing all three ideas --- (1) there's a presumption, (2) it lasts throughout the trial, and (3) fit the evidence to the presumption if possible.

The obligation of trial courts to convey all three ideas, last confirmed in *Robey v. State*, 454 N.E.2d 1221(Ind. 1983), originated from the Indiana Supreme Court's decision in *Farley v. State*, 127 Ind. 419, 26 N.E. 898 (1891).

In *Farley*, the Court relied on Joel Prentiss Bishop's treatise Criminal Procedure for the rule it announced. Bishop was a practitioner in New York and Boston who became one of the most respected and most prolific authors of legal treatises during the last half of the Nineteenth Century.

Fortunately for modern lawyers, the Indiana Supreme Court Law Library continues to hold this volume upon which Justice Walter Olds relied in authoring the *Farley* opinion. Examination of the passages Olds cited from the Bishop treatise provides some insight into the principles that originally underlay Indiana's three-part instruction to juries.

In elaborating on the idea that the presumption of innocence and the burden of proof remains with the prosecution "throughout" the trial, Bishop noted that the State was obligated in the first instance to "make out only a *prima-facie* case against the defendant." Joel Prentiss Bishop, Criminal Procedure par. 1050 (3rd ed. 1880). Bishop correctly noted that once this has occurred a defendant could well be convicted unless he presented some rebuttal, but criticized judicial decisions that characterized this moment as one in which the

16

burden of proof shifts to the defendant. Not so, he said:

> It is more exact, and it expresses the better doctrine, to say, that the *prima-facie* showing does not change the burden of proof, which remains with the prosecuting power to the end; the jury, to be authorized to convict, being required to take into account all the evidence on both sides, including the presumptions, and to be affirmatively satisfied from it, with the certainty demanded by law, of the defendant's guilt." *Id.*

This explication by Bishop fits well alongside the two pieces of Indiana precedent the *Farley* Court cited in support of its holding about the three-part instruction. They were *Castle v. State*, 75 Ind. 146 (1881) (must instruct that conviction necessitates that each and every juror be convinced by the evidence), and *Aszman v. State*, 123 Ind. 347, 24 N.E. 123 (1889) (instructions must cover the individual responsibility of each juror).

These authorities relied on in *Farley* suggest that the directive for the three-part instruction was born from a concern that each deliberating juror must be convinced during deliberations that the State has met its burden and the burden never shifts to the defendant. The language about the presumption "prevailing throughout" emphasizes this principle, but seems to add only a little to the explanation Indiana courts give to juries. Put another way, there is some daylight between "prevailing throughout" and "fit the evidence to the presumption," but not much.

This overlap in the three-part instruction mandated by *Farley* and *Robey* appears from time to time when the Court of Appeals is confronted with cases in which a trial court has failed to include all three thoughts.

Such a case is *Lee v. State*, cited by appellant Simmons. There, the trial court

17

instructed on the presumption of innocence, but refused instructions on "throughout" and "fit the evidence." The *Lee* panel correctly noted that this was error, and it reversed, holding that failing to tell the jury to fit the evidence to the presumption of innocence was fatal and hinting that, had it been included, the omission of the "throughout" language might have been thought harmless. Error, yes, but not adequate reason to reverse.

This case largely fits the scenario envisioned in *Lee*. Final instructions covered the presumption and told the jury to "fit the evidence," but did not tell them the presumption "prevails throughout." This was error, of course, under *Farley* and *Robey*, but I would say not reversible, particularly in light of the fact that the full three-part instruction was given during preliminary instructions. I therefore join in affirming the convictions.