


I N T H E

# Court of Appeals of Indiana

Raymond Borroel,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

August 5, 2024

Court of Appeals Case No.
23A-CR-2737

Appeal from the Allen Superior Court

The Honorable Frances C. Gull, Judge

Trial Court Cause No.
02D05-2204-FA-2

---

**Opinion by Judge Tavitas**
Judge Bradford concurs.

Judge Crone concurs in part and concurs in result in part with separate opinion.

**Tavitas, Judge.**

## Case Summary

Raymond Borroel was convicted of attempted child molesting, a Class A felony, and child molesting, a Class C felony. He was sentenced to forty-five years in the Department of Correction. Borroel appeals and argues: (1) the trial court committed fundamental error by using the word "victim" when delivering the preliminary jury instructions; (2) the trial court erred by denying Borroel's motions for a directed verdict; and (3) Borroel's sentence is inappropriate. We find these arguments to be without merit, and accordingly, we affirm.

## Issues

Borroel raises three issues on appeal, which we restate as:

I. Whether the trial court committed fundamental error by using the word "victim" when delivering the preliminary jury instructions.

II. Whether the trial court erred by denying Borroel's motions for a directed verdict.

III. Whether Borroel's sentence is inappropriate.

## Facts

[3]     In May 2013, Amanda ("Mother") began taking L.M. and L.M.'s siblings to a daycare run by Tanysha Marie Holliday and her partner, Borroel, in their house in Fort Wayne. L.M. was five or six years old at the time. Much of the time, Borroel was the only one watching the children.

[4]     After L.M. was dropped off in the mornings, her siblings would watch television while L.M. would lay on the couch next to Borroel and play a game on Borroel's cellphone. L.M. would have her legs on top of Borroel's legs. Borroel would "start down by [L.M.'s] ankles and then continue to keep rubbing up onto [her] legs, and sometimes he would take it further and touch the outside of [her] private part." Tr. Vol. II p. 179. Borroel would "go through the bottom" of L.M.'s shorts and touch her both over and under her underwear. *Id.* This touching occurred "most mornings." *Id.*

[5]     On another occasion, L.M. was "taken into a bedroom" and "laid on top of the bed . . . ." *Id.* at 180. L.M.'s clothes were removed, and Borroel's pants were "pulled part way down." *Id.* Borroel "hover[ed]" over L.M., and she "could feel his private part touch" hers. *Id.* at 181. L.M. felt "pressure" and believed Borroel put his penis "inside" her vagina. *Id.* at 181-182.

[6]     L.M. remained at the daycare until July 2013, and she was eventually babysat by a babysitter named Norma. L.M. first disclosed the abuse to her friend when she was in fourth grade, and she later shared some of the details with Norma. In approximately 2017, L.M. told Mother some of the details of what

happened, and L.M. was taken for a forensic interview at the Dr. Bill Lewis Center for Children. L.M., however, did not make a disclosure during this interview because she "hadn't come out with quite everything yet" and was "scared." *Id.* at 185.

[7] In 2021, when L.M. was in seventh or eighth grade, she told Mother more details of what happened. Mother found where Borroel was then living and confronted him. L.M. participated in a second interview at the Dr. Bill Lewis Center in November 2021. This time, L.M. disclosed the abuse and stated that it was perpetrated by her former "babysitter's boyfriend," whose first name was "Ray." Tr. Vol. III p. 71.

[8] Law enforcement began an investigation into the abuse. Officers spoke with Holliday, who did not remember L.M. but later found Mother's contact information in her cellphone. The contact was named, "Amanda, [L.M.]'s mom" and was shared between Holliday's and Borroel's phones. Tr. Vol. II p. 217. Law enforcement also conducted an interview with Borroel. Although Borroel initially denied being alone with the children, he eventually admitted that he "was alone with the kids" but that he "was too busy to do anything." Tr. Vol. III p. 14.

[9] Mother and L.M. were shown photo arrays, but neither were able to identify Borroel. Mother explained that she was unable to make an identification because Borroel previously had a buzz cut and always wore "dark shaded glasses," so she never saw his eyes and could not recognize him in the photos.

Tr. Vol. II p. 161. L.M. was unable to make an identification because "[i]t had been so long and [she] wasn't 100 percent positive" which picture was Borroel. *Id.* at 186. L.M., however, was "100 percent positive" that the man who inappropriately touched her was her "babysitter's boyfriend," who "watched [her] during the summer of 2013" and whose first name was "Ray." *Id.* at 187. On April 4, 2022, the State charged Borroel with two counts: Count I, attempted child molesting, a Class A felony; and Count II, child molesting, a Class C felony.

[10] A jury trial was held in September 2023. The trial court provided preliminary jury instructions, which included reading the charging information and listing the statutory elements of the charged offenses. The trial court used the word "victim" when referencing the charges and the statutory elements.

[11] During the evidentiary portion of the trial, Mother and L.M. testified, and the State did not ask either to identify Borroel as the perpetrator in court. Holliday, however, identified Borroel in court as the man with whom she ran the daycare out of the Fort Wayne house in 2013, and the State introduced BMV records showing that Borroel resided at the house during that time.

[12] At the conclusion of the State's case-in-chief, Borroel moved for a directed verdict, which the trial court denied. Borroel then testified in his own defense. He denied the allegations but admitted that he operated a daycare out of his home with Holliday and that he was alone at times with the children at the daycare. Borroel renewed his motion for a directed verdict at the conclusion of

the evidence, and the trial court again denied the motion. The jury found Borroel guilty as charged.

[13] The trial court held a sentencing hearing on October 20, 2023, and entered judgments of conviction on the charges. The trial court sentenced Borroel to forty years on Count I, attempted child molesting, a Class A felony, to be served consecutively with a five-year sentence on Count II, child molesting, a Class C felony, for a total sentence of forty-five years. Borroel now appeals.

## Discussion and Decision

### I.  Jury Instructions—Fundamental Error

[14] We first address Borroel's argument that the trial court erred by using the word "victim" when delivering the preliminary jury instructions. "The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Batchelor v. State*, 119 N.E.3d 550, 562 (Ind. 2019). In reviewing the challenged instructions, we consider the instructions "as a whole." *Owen v. State*, 210 N.E.3d 256, 267 (Ind. 2023). Even where jury instructions are erroneous, we will not reverse if the error is harmless. *See Batchelor*, 119 N.E.3d at 562.

[15] Here, because Borroel did not object to the preliminary jury instructions at trial, we review the instructions for fundamental error. *See Miller v. State*, 188 N.E.3d 871, 874 (Ind. 2022). An error is fundamental if it made a fair trial impossible or was a clearly blatant violation of basic and elementary principles of due

process that presented an undeniable and substantial potential for harm. *Id.* Fundamental error "is an 'extremely narrow doctrine.'" *Dean v. State*, 222 N.E.3d 976, 987 (Ind. Ct. App. 2023) (quoting *Isom v. State*, 170 N.E.3d 623, 651 (Ind. 2021)), *trans. denied*.

[16]   Having reviewed the instructions in this case, we are not persuaded that the trial court's use of "victim" in the preliminary instructions constitutes fundamental error. The trial court only used "victim" when reading the charging information and defining the elements of the crimes the State was "required" to prove.[1] *See* Tr. Vol. II pp. 14-15, 137-139. The trial court never referred to

---

[1] Borroel does not cite which specific preliminary jury instructions he challenges. Having reviewed all of the instructions, however, we provide the following. Before the jury panel was selected, the court instructed the prospective jurors, in relevant part:

> I'm going to read the charging informations to you and the statutory elements of those charges that the State is required to prove. This case charges the Defendant with count one, attempt[ed] child molesting, a Class A felony; and count two, child molesting, a Class C felony. The informations read, in count one: Sometime during the period of time between January 1st, 2012, and December 31st, 2013, in Allen County, Indiana, said Defendant, Raymond Borroel, being at least 21 years of age, did knowingly or intentionally attempt to commit the crime of child molesting, to-wit: with intent to perform or submit to sexual intercourse with the **victim**, the Defendant engaged in conduct constituting a substantial step towards the commission of the crime of child molesting, to-wit: Raymond Borroel did attempt to place his penis in the female sex organ of the **victim**, a child who was then under 14 years of age. To convict the Defendant of this count, the State is required to prove these elements: One, the Defendant, Raymond Borroel; two, act[ed] with the culpability required to commit the crime of child molesting, which is defined as A, when the **victim** was a child under 14 years of age; B, knowingly or intentionally; C, performed or submitted to; D, sexual intercourse; E, with the **victim**; F, and when elements A through E took place, the Defendant was at least 21 years of age; three, did attempt to place his penis in the female sex organ of the **victim**; four, which is conduct constituting a substantial step toward the commission of the crime of child molesting.

> Count two reads: Sometime during the period of time between January 1st, 2012, and December 31st, 2013, in Allen County, Indiana, said Defendant, Raymond Borroel, did perform or submit to fondling or touching with the **victim**, a child who was then under 14 years of age, with intent of arousing or satisfying the sexual desires of the **victim** or Raymond Borroel. To convict the Defendant of count two, the State is required to prove these elements: One, the Defendant, Raymond Borroel; two, with intent to arouse or satisfy the sexual desires of the **victim** or Raymond Borroel; three, when the **victim** was a child under 14 years of age; four, knowingly; five, performed or submitted to any fondling or touching of the **victim**. As I said,

L.M. personally as a victim. Moreover, the trial court instructed the jury that: (1) the charging information was merely the "formal method of bringing the Defendant to trial" and was not to be considered "as any evidence of guilt"; (2) Borroel was presumed innocent; (3) the jury must find Borroel not guilty if the State failed to prove all elements of the charged offenses beyond a reasonable doubt; (4) the jury was required to "determine the facts and the verdicts"; and (5) nothing the trial court stated during trial would be "intended as any suggestion of what facts or verdicts [the jury] should find." *Id*. at 139, 141. "It is presumed that jurors follow their instructions." *Weisheit v. State*, 109 N.E.3d 978, 989 (Ind. 2018).

[17] Borroel argues that the trial court's use of "victim" here improperly expressed the trial court's opinion that "a crime took place and tipped the scales in favor of the State." Appellant's Br. p. 19. Borroel supports this argument by citing Justice Dickson's dissent from the denial of transfer in *Carie v. State*, 761 N.E.2d 385 (Ind. 2002), and our Supreme Court's decision in *Ludy v. State*, 784 N.E.2d 459 (Ind. 2003).

[18] In *Carie*, the defendant challenged the trial court's instruction that "[a] conviction for child molesting may rest upon the uncorroborated testimony of

_____

the State of Indiana has the burden of proof in a criminal case, since the Defendant is presumed to be innocent. The State's burden of proof is proof beyond a reasonable doubt. . . .

Tr. Vol. II pp. 14-15 (emphasis added). The Court used virtually identical language when again instructing the jury panel after the jurors were selected. Tr. Vol. II pp. 137-39.

the victim." 761 N.E.2d at 385. Our Supreme Court denied transfer; however, Justice Dickson dissented and wrote separately to express his concerns with the instruction's reference to the complaining witness as the "victim." Justice Dickson wrote that the use of "victim" "implie[d] to the jury that the trial judge accept[ed] as truthful the complaining witness's contentions regarding the alleged incident." *Id*. The instruction in *Ludy* used "alleged victim" instead of "victim." *Ludy*, 784 N.E.2d at 460. Although the Court found the instruction in *Ludy* erroneous, the Court did not remark on its use of "alleged victim" and found the instruction erroneous based on other grounds.

[19] Borroel argues that the preliminary instructions in this case are erroneous and "more egregious" than the instruction in *Ludy* because the instructions here did not "qualify the word victim with the adjective 'alleged.'" Appellant's Br. p. 17. We are not persuaded by Borroel's argument. The trial court here did not use the instruction held erroneous in *Ludy*, and our Supreme Court has not held that it is erroneous for the trial court to refer to the complaining witness as a "victim" in the context used here.

[20] Moreover, considering the trial court's instructions as a whole in the context discussed herein, we are not persuaded that the trial court's use of "victim" intimated any assessment of L.M.'s credibility or any opinion on how the jury should decide the case. The trial court merely informed the jury of the charging information and the elements of the charged offenses. The trial court also repeatedly impressed upon the jurors their obligation to decide the facts of the

case for themselves. Accordingly, the trial court's instructions do not constitute fundamental error. [2]

## II. Denial of Motion for a Directed Verdict—Sufficiency of the Evidence

Borroel next challenges the trial court's denial of his motions for a directed verdict. We conclude that the trial court did not err by denying these motions because sufficient evidence supports Borroel's convictions.

### A. Waiver

As an initial matter, the State argues that Borroel's challenge to the denial of his motions for a directed verdict is waived because Borroel presented evidence after the denial of his first motion. *See* Appellee's Br. p. 17 (citing *Cox v. State*, 19 N.E.3d 287, 290-91 (Ind. Ct. App. 2014)); *Davidson v. State*, 580 N.E.2d 238, 242 (Ind. 1991) ("A defendant who offers his own evidence after the trial court denies the motion for judgment on the evidence[3], however, is precluded from challenging that denial.").

We have held, however, that we may review waived challenges to the denial of a motion for a directed verdict alternatively as challenges to the sufficiency of

---

[2] As a final note, apart from the preliminary instructions, the trial court also used the word "victim" when referring to the charging information and the elements of the charged offenses when delivering the final jury instructions, and Borroel does not challenge the final instructions. Any error in the preliminary instructions, thus, would be harmless. *See Batchelor*, 119 N.E.3d at 562.

[3] A motion for judgment on the evidence is the same as a motion for a directed verdict. *See* Trial Rule 50.

the evidence. *Cox*, 19 N.E.3d at 290 n.5. We may do so "even where the appellant raises the directed verdict argument alone, without a concomitant sufficiency argument," as is the case here. *Id*. This practice is sensible because the standard of review for both types of challenges is nearly identical; therefore, "'if the evidence is sufficient to sustain a conviction on appeal, the denial of a motion for a directed verdict could not be error.'" *See id*. (quoting *Simmons v. State*, 999 N.E.2d 1005, 1013 (Ind. Ct. App. 2013), *trans. denied*). Accordingly, we will review Borroel's argument as a challenge to the sufficiency of the evidence to support his convictions.

## B. Sufficient evidence supports Borroel's convictions.

[24]  We conclude that sufficient evidence supports Borroel's convictions. Sufficiency of evidence claims "warrant a deferential standard, in which we neither reweigh the evidence nor judge witness credibility." *Powell v. State*, 151 N.E.3d 256, 262 (Ind. 2020) (citing *Perry v. State*, 638 N.E.2d 1236, 1242 (Ind. 1994)). When there are conflicts in the evidence, the fact-finder must resolve them. *Young v. State*, 198 N.E.3d 1172, 1176 (Ind. 2022). We consider only the evidence supporting the judgment and any reasonable inferences drawn from that evidence. *Powell*, 151 N.E.3d at 262 (citing *Brantley v. State*, 91 N.E.3d 566, 570 (Ind. 2018)). "We will affirm a conviction if there is substantial evidence of probative value that would lead a reasonable trier of fact to conclude that the defendant was guilty beyond a reasonable doubt." *Id.* at 263. We affirm the conviction "unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not

necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." *Sutton v. State*, 167 N.E.3d 800, 801 (Ind. Ct. App. 2021) (quoting *Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007)).

[25] Here, L.M. testified that she was "100 percent positive" that the man who inappropriately touched her was her "babysitter's boyfriend," who "watched [her] during the summer of 2013" and whose first name was "Ray." Tr. Vol. II p. 187. Holliday identified the defendant, Raymond Borroel, in court as the man who ran the daycare with her during this time, and Mother was listed as a contact in Holliday's cellphone as L.M.'s mother. Mother also testified that the man who ran the daycare was named Ray, and BMV records demonstrate that Borroel lived at the house where the daycare was operated during this time. Although Borroel denied the allegations, he admitted that he operated a daycare with Holliday and that he was alone at times with the children.

[26] Borroel points out that neither Mother nor L.M. identified Borroel in the photo arrays during the investigation nor in court during the trial. He contends that, in the absence of such an identification, his convictions rest upon "a mere suspicion" of guilt. Appellant's Br. p. 12. Borroel, however, cites no authority that an in-court or out-of-court identification by Mother or L.M. was required here, and we are not persuaded by his argument. First, because Mother did not directly witness the abuse, her identification would only supply circumstantial evidence that Borroel was the babysitter named Ray to whom L.M. referred in

her allegations. But this same circumstantial evidence was supplied by Holliday's testimony, the BMV records, and Borroel's own admissions.

[27] Second, as for the lack of an in-court or out-of-court identification by L.M., she testified that the abuse occurred when she was only five or six years old. By the time L.M. was presented with the photo array, eight years had elapsed since she had last seen Borroel. Moreover, L.M. was unequivocal at trial that the man who abused her was the man named "Ray" who ran the daycare in 2013, and ample evidence indicates that man was Borroel. We are not persuaded that the lack of an in-court or out-of-court identification by Mother or L.M. rendered the evidence insufficient under the circumstances here. *See Albrecht v. State*, 185 N.E.3d 412, 421 (Ind. Ct. App. 2022) ("A conviction may be supported by circumstantial evidence alone, and that evidence need not 'overcome every reasonable hypothesis of innocence.'") (quoting *McCoy v. State*, 153 N.E.3d 363, 366–67 (Ind. Ct. App. 2020)), *trans. denied*. Accordingly, we affirm Borroel's convictions.

### III.  Appellate Rule 7(B)

[28] Lastly, Borroel argues that his forty-five-year sentence is inappropriate. We disagree. The Indiana Constitution authorizes independent appellate review and revision of sentences imposed by a trial court. *Lane v. State*, 232 N.E.3d 119, 122 (Ind. 2024) (citing Ind. Const. art. 7, §§ 4, 6). This authority, as implemented through Appellate Rule 7(B), enables this Court to "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature

of the offense and the character of the offender." Deference to the trial court's sentence should prevail unless "overcome by compelling evidence portraying in a positive light the nature of the offense and the defendant's character." *Oberhansley v. State*, 208 N.E.3d 1261, 1267 (Ind. 2023) (internal quotations omitted). A defendant, however, need not show that both the nature of the offense **and** his or her character warrant revision; rather, "a strong showing on one prong" may "outweigh a weak showing" on the other prong. *Lane*, 232 N.E.3d at 127.

[29] Additionally, in determining whether a sentence is inappropriate, we are not limited to the aggravating and mitigating circumstances found by the trial court. *Oberhansley*, 208 N.E.3d at 1271. "Our role is primarily to leaven the outliers and identify guiding principles for sentencers, rather than to achieve the perceived correct result in each case." *Lane*, 232 N.E.3d at 122 (internal quotations omitted). "Ultimately, we rely on our collective judgment as to the balance of all the relevant considerations involved, which include the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* (internal quotations omitted).

[30] When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). "A person who commits a Class A felony . . . shall be imprisoned for a fixed term of between twenty (20) and fifty (50) years, with the advisory sentence being thirty

(30) years. Ind. Code § 35-50-2-4(a). "A person who commits a Class C felony . . . shall be imprisoned for a fixed term of between two (2) and eight (8) years, with the advisory sentence being four (4) years." Ind. Code § 35-50-2-6(a). In the case at bar, Borroel was sentenced to forty years for attempted child molesting, a Class A felony, and a consecutive sentence of five years for child molesting, a Class C felony, for an aggregate sentence of forty-five years.

## A. The nature of the offense does not warrant revision under Appellate Rule 7(B).

[31] Our analysis of the "nature of the offense" requires us to look at the extent, brutality, and heinousness of the offense. *See Wilson v. State*, 157 N.E.3d 1163, 1182 (Ind. 2020). We may also consider whether the offender was in "a position of trust" with the victim. *Ramirez v. State*, 174 N.E.3d 181, 202 (Ind. 2021). Here, Borroel's child molesting offenses are heinous. He violated his position of trust as a daycare provider and inappropriately touched a young child on multiple occasions. Nothing about the nature of Borroel's offenses warrants revision of his sentence.

## B. The character of the offender does not warrant revision under Appellate Rule 7(B).

[32] Our analysis of the character of the offender involves a broad consideration of a defendant's qualities, including the defendant's age, criminal history, background, past rehabilitative efforts, and remorse. *See Harris v. State*, 165 N.E.3d 91, 100 (Ind. 2021); *McCain v. State*, 148 N.E.3d 977, 985 (Ind. 2020). Here, Borroel faced a maximum sentence of fifty-eight years for the offenses,

but he was sentenced to only forty-five. Although Borroel has no prior criminal history and witnesses spoke highly of him at the sentencing hearing, we are not persuaded that these demonstrate good character sufficient to warrant revision of Borroel's sentence. Likewise, Borroel's advanced age and poor health do not militate in favor of revision here. We conclude that Borroel's sentence is not inappropriate.

## Conclusion

[33] The trial court did not commit fundamental error when delivering the preliminary jury instructions. Additionally, because sufficient evidence supports Borroel's convictions, the trial court did not err by denying his motions for a directed verdict. Lastly, Borroel's sentence is not inappropriate. Accordingly, we affirm.

[34] Affirmed.

Bradford, J., concurs.
Crone, J., concurs in part and concurs in result in part with separate opinion.

**Crone, Judge, concurring in part and concurring in result in part.**

[35] I agree with the majority that Borroel's convictions are supported by sufficient evidence and that his sentence is not inappropriate. I also agree that the trial court's preliminary jury instructions do not constitute fundamental error. Unlike the majority, however, I believe that a trial court should not "refer to the complaining witness as a 'victim' in the context used here." Slip op. at 9.

[36] As Justice Dickson persuasively argued in his dissent from the denial of transfer in *Carie*,

> In criminal cases, particularly those in which the defendant disputes the nature or cause of harm inflicted, or challenges whether an alleged crime occurred, it is reasonable for a prosecutor to refer to the person harmed as the "victim," notwithstanding the defense counsel's preference for a different designation. But the court must remain neutral. "A trial judge must maintain an impartial manner and refrain from acting as an advocate for either party." *Beatty v. State*, 567 N.E.2d 1134, 1136 (Ind. 1991). By referring to the complaining witness as "the victim," the instruction implies to the jury that the trial judge accepts as truthful the complaining witness's contentions regarding the alleged incident. The trial court thereby improperly expresses approval of the State's case and invades the province of the jury.

761 N.E.2d at 385. The instruction at issue in *Carie* was different from the instructions at issue here, but the underlying principle is the same. In my view, a more appropriate approach would be for the trial court to uphold its neutrality

by inserting the word "alleged" before "victim" when reading the charging

information to the jury.

ATTORNEY FOR APPELLANT

Cynthia M. Carter
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana