## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 12 2019, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy P. Broden
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Camaris Antwon Devon Slater, *Appellant-Defendant,* | November 12, 2019 |
| | Court of Appeals Case No. 19A-CR-1134 |
| v. | Appeal from the Tippecanoe Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Steven P. Meyer, Judge |
| | Trial Court Cause No. 79D02-1812-F3-34 |

**Kirsch, Judge.**

[1] Camaris Antwon Devon Slater ("Slater") pleaded guilty to armed robbery,[1] a Level 3 felony, and to being an habitual offender.[2] The trial court sentenced Slater to ten years for the armed robbery conviction and enhanced that sentence by seven years for Slater's habitual offender status. Slater raises one issue, which we restate as whether his seventeen-year aggregate sentence is inappropriate.

## Facts and Procedural History

[2] On November 23, 2018, Daniel Lawrence ("Lawrence") and Martell Fowler ("Fowler") went shopping at the H&M store in the Tippecanoe County Mall. *Appellant's App. Vol. II* at 64. Fowler called Slater and told him to meet Fowler at the mall. *State's Ex.* 2. When Slater arrived, Fowler told Slater that Lawrence was carrying a lot of cash and that they should rob him. *Id.* Fowler gave Slater his apartment keys, so Slater could retrieve a plastic BB gun from Fowler's apartment. *Id.* Later, Fowler texted Slater to let him know that Fowler and Lawrence were coming to Fowler's apartment. *Id.* Slater exited Fowler's apartment, sat in his own car just outside of Fowler's apartment, and waited for Fowler and Lawrence to arrive. *Id.*

[3] Once Fowler and Lawrence arrived, Fowler immediately exited Lawrence's car and walked out of sight. *Appellant's App. Vol. II* at 64. As Lawrence exited his

---

[1] *See* Ind. Code § 35-42-5-1(a).

[2] *See* Ind. Code § 35-50-2-8.

car, Slater, who was wearing a t-shirt over his face, accosted Lawrence and pointed the BB gun at him. *State's Ex.* 2. Lawrence believed the BB gun was a handgun. *State's Ex.* 1. Slater told Lawrence to empty his pockets while Slater reached into Lawrence's car and took the clothing Lawrence had just purchased at the H&M store, $210.00 in cash from Lawrence, and a backpack containing Lawrence's personal items. *Appellant's App. Vol. II* at 64; *Tr. Vol. II* at 40. Slater then fled the scene. *Appellant's App. Vol. II* at 64. Later that day, Slater went back to the mall and returned the clothing Lawrence had purchased at the H&M store in exchange for $70.00 in cash. *Tr. Vol. II* at 33; *State's Ex.* 2.

[4] Three days later, on November 26, 2018, Slater was a passenger in a Honda Civic that was pulled over for a traffic violation. *Appellant's App. Vol. II* at 64; *State's Ex.* 2. During the stop, a police dog walked around the vehicle and alerted to the possible presence of drugs. *Appellant's App. Vol. II* at 64. A search of the vehicle uncovered two bags containing a green leafy substance. *Id*. Slater admitted to the officers at the scene that the green leafy substance was marijuana, and that it was his. *Id*. Because the officers believed the Honda Civic was used by the person who robbed Lawrence, they asked Slater if he was involved in the robbery. *State's Ex.* 2. He conceded that he was, specifically admitting that he was the person who used a BB gun to rob Lawrence. *Appellant's App. Vol. II* at 64-65; *State's Ex.* 2.

[5] On December 3, 2018, the State charged Slater with armed robbery, a Level 3 felony; theft, a Class A misdemeanor; possession of marijuana, a Class B misdemeanor; and with being a habitual offender. *Appellant's App. Vol. II* at 59-

63. Slater entered into a plea agreement with the State where he would plead guilty to armed robbery and admit to being an habitual offender. *Id*. at 37-38. In exchange, Slater would receive an executed sentence of at least fifteen years but no more than twenty years, and the State would dismiss the remaining charges. *Id.* At the sentencing hearing, the trial court found Slater's criminal history and the fact that he and Fowler set up Lawrence as aggravating factors. *Tr. Vol. II* at 46-47. As mitigating factors, the trial court cited the following: Slater pleaded guilty; accepted responsibility; showed remorse; and offered to make restitution. *Id*. at 47. As other mitigating factors, the trial court noted that Slater had been participating in a "jail program" at the county jail and that incarceration might cause a hardship on Slater's dependents. *Id*. at 48. As to the potential hardship to Slater's dependents, the trial court downplayed this mitigating factor because Slater did not have custody of his children and was not paying child support. *Id*. The trial court then found that the aggravating factors outweighed the mitigating factors, sentenced Slater to ten years for the armed robbery conviction, enhanced that sentence by seven years because of Slater's habitual offender status, and ordered Slater to serve all seventeen years in the Indiana Department of Correction. *Id.* Slater now appeals. We will provide additional facts as necessary.

## Discussion and Decision

[6] Slater argues that his sentence is inappropriate. As to the nature of his offense, he tries to minimize his culpability by arguing that he robbed Lawrence at the behest of Fowler. At the sentencing hearing, Slater explained that he has

always looked up to Fowler as an "older brother" and "mentor," and because Slater had never committed armed robbery before, Fowler needed to repeat instructions to Slater several times about how to commit the crime. *Tr. Vol. 2* at 26-27. Slater points to the trial court's observation at the sentencing hearing about Fowler's role in the crime: "[Fowler] coached you how to do it. He explained to you how to do an armed robbery . . . ." *Id.* at 46. As to his character, Slater concedes that he has accumulated a "somewhat lengthy criminal history over a relatively short period of time," but "his criminal history is largely subsumed by the habitual offender count which alleges his three (3) prior trespass convictions as qualifying offenses." *Appellant's Br.* at 8-9 (citing *Appellant's Conf. App. Vol. II* at 23-25; *Appellant's App. Vol. II* at 62-63).

[7] Under Indiana Appellate Rule 7(B), we may revise a sentence if, after due consideration of the trial court's decision, we find the sentence inappropriate considering the nature of the offense and the character of the offender. *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). The "nature of offense" compares the defendant's actions with the required showing to sustain a conviction under the charged offense, *Cardwell v. State,* 895 N.E.2d 1219, 1224 (Ind. 2008), while the "character of the offender" permits for a broader consideration of the defendant's character. *Anderson v. State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013). Whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224.

[8]     We defer to the trial court's decision, and our goal is to determine whether the defendant's sentence is inappropriate, not whether some other sentence would be more appropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). When we review a sentence, we seek to leaven the outliers, not to achieve a perceived correct result. *Cardwell*, 895 N.E.2d at 1225.

[9]     Because Slater committed a Level 3 felony, he was eligible for a fixed term between three and sixteen years, with the advisory sentence being nine years, just one year less than the ten-year sentence imposed by the trial court. *See* Ind. Code § 35-50-2-5. As to the habitual offender enhancement, a trial court may enhance a sentence for a Level 3 felony by no less than six years and no more than twenty years, meaning that Slater's seven-year habitual offender enhancement exceeded the minimum enhancement by only one year. *See* Ind. Code § 35-50-2-8(i)(1).

[10]    Here, we reject Slater's argument that his sentence was inappropriate because, according to Slater, his culpability for his crime was lessened because he viewed Fowler as a mentor, he committed the offense at Fowler's behest, and he needed extensive and repeated instructions from Fowler before he felt capable of robbing Lawrence at gunpoint. Even though Slater testified that he generally

viewed Fowler as a mentor, Slater explicitly testified that he did not view Fowler as a mentor in the context of committing his offense:

> Defense counsel: Did -- prior to this incident, did you -- did he kind of act as a - an older brother or mentor figure to you?
>
> Slater: Not -- not to the offense he didn't act as a [sic] older brother nor older cousin for the offense that this happened, but in the past that's what I looked at him as.

*Tr. Vol. 2* at 26.

[11] We also reject Slater's argument of reduced culpability because Slater and Fowler set up Lawrence to be robbed. *State's Ex.* 2; *Tr. Vol. 2* at 46. This was not an impromptu, unrehearsed crime or a temporary lapse in judgment; rather, it was an orchestrated attack. Even though Fowler instructed Slater on how to commit armed robbery, Slater admitted that the decision to rob Lawrence at gunpoint was his own:

> Defense counsel: And when you testify that Mr. Fowler had told you how to do this, you're not implying that, you know, you didn't make this decision yourself to do this, correct?
>
> Slater: Yes, sir.

*Tr. Vol. 2* at 28. Furthermore, while Slater was lying in wait for Lawrence, Slater had plenty of time to cool off and change his mind about robbing Lawrence. However, Slater chose to go through with the crime for personal gain, one where he placed Lawrence in fear and subjected Lawrence to the

threat of possible injury. Accordingly, Slater has failed to prove his sentence is inappropriate considering the nature of his offense.

[12] We also find unavailing Slater's argument that his seventeen-year aggregate sentence is inappropriate considering his character. Slater's attempt to minimize his criminal history by claiming much of it is subsumed in his habitual offender status is unpersuasive. As the trial court noted at sentencing, between 2016 and 2018, Slater accumulated seven convictions, had seven petitions to revoke probation filed, and had failed to appear seven times. *Id.* at 46-47. Furthermore, Slater was on probation for criminal trespass when he committed the instant offense. *Appellant's Conf. App. Vol. II* at 25. As the trial court observed, "you don't appear to really take seriously the authority of the court or your obligations to follow the rules." *Tr. Vol. 2* at 47. Thus, Slater's seventeen-year aggregate sentence is not inappropriate considering both his character and the nature of his offense.

[13] Affirmed.

Baker, J., and Crone, J., concur.