# FOR PUBLICATION



FILED

Jun 21 2013, 5:53 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHELLE F. KRAUS**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CONSTANCE ANDERSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  02A03-1211-CR-495 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Wendy W. Davis, Judge
Cause No. 02D06-1206-FD-802

**June 21, 2013**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Constance Anderson appeals following her convictions of two counts of Class D felony criminal mischief[1] and five counts of Class A misdemeanor animal cruelty.[2] She presents two issues for review:

1.    Whether her three-year sentence was an abuse of discretion; and

2.    Whether Anderson's sentence is inappropriate in light of her character and offenses.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On March 1, 2012, a neighborhood resident contacted the City of Fort Wayne's Animal Care and Control Department ("FWACC") to report abandoned cats living inside a residence at 908 Elmer Street. FWACC dispatched Officer J. Schmeling to investigate. He smelled cat urine from fifteen feet away from the house. He saw multiple cats and a large amount of feces in the house, and contacted the Fort Wayne Police Department.

Anderson indicated to officers she rented the property and admitted responsibility for the cats.[3] She allowed officers into the property and surrendered custody of the cats to the FWACC. When police and Animal Care officers entered the residence, they could walk only a few feet into the home before the overwhelming smell of cat urine forced them to leave.

The Fort Wayne Fire Department was contacted to test the air quality in the home

---

[1] Ind. Code § 35-43-1-2.
[2] Ind. Code § 35-46-3-7.
[3] Anderson rented the Elmer Street property wherein she maintains upwards of eighty-five cats, but does not reside there due to the property's dilapidated state. Anderson also rented the St. Mary's Avenue property wherein she and Tourney reside.

because of the high levels of ammonia from the cat urine. Normal air quality contains thirty-five parts per million of ammonia; the test here revealed levels in excess of four times that amount. The property had to be ventilated for two weeks before officers could enter to recover the cats. They removed and then had to euthanize between sixty-six and eighty-five cats.

The only water Anderson provided for the cats was from a faucet that dripped into a sink contaminated with dirt or feces. Anderson claims she dumped a bag of cat food on the floor inside the house every few days to be divided among upwards of eighty-five cats. That amount was inadequate, as evidenced by the cats cannibalizing their young. Anderson knew the cats were desperate for food, because cat skulls were visible on the floor and Anderson wrapped kitten remains and stored them in the refrigerator and freezer. Every surface in the house was covered with cat feces and urine. Urine had soaked into the walls of the first floor and seeped into the floorboards that divided the first floor and basement. The property had been valued at $45,000 before Anderson rented it. Following the removal of the cats, the property was condemned and slated for demolition.

On March 13, Lynn Scrogham, who owned the property where Anderson lived on St. Mary's Avenue, contacted FWACC because of a strong smell of cat urine outside that residence. FWACC conducted a consensual search of that residence and recovered twenty-three live cats and twenty-one deceased cats and kittens. The St. Mary's property required $13,000 in renovations due to damage caused by the cats. In total, 108 live cats were discovered at the two properties. All but five of them had to be euthanized. Thirty-seven

dead cats were discovered in freezers.

The State charged Anderson with two counts of Class D felony criminal mischief and five counts of Class A misdemeanor animal cruelty. Anderson pled guilty without the benefit of a plea agreement. After a sentencing hearing, the court pronounced five concurrent one-year sentences for animal cruelty, to be served concurrent with three-year sentences for criminal mischief, with eighteen months executed, eighteen months suspended, and eighteen months on probation.

## DISCUSSION AND DECISION

### 1. Abuse of Discretion

Anderson argues the trial court abused its discretion when it sentenced her because it did not consider all mitigating factors. Sentencing decisions rest within the sound discretion of the trial court and will be disturbed only on a showing of abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g* 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs when the decision is clearly against the logic and effect of the evidence before the court or the reasonable inferences to be drawn therefrom. *Id*. at 482. In the context of an assertion the trial court failed to find a mitigating factor, an appellant has the burden of showing the alleged factor was offered to the trial court and is both significant and clearly supported by the record. *Id*. at 493. A trial court's consideration of factors may be evidenced in either the written order or in an oral sentencing statement. *Gleason v. State*, 965 N.E.2d 702, 711 (Ind. Ct. App. 2012).

Anderson contends the court should have considered her education and employment

4

history, lack of criminal history, cooperation with the investigation, her remorse, and her mental state as mitigators.[4] The record reflects the court considered each factor, but found none significant.

The trial court found Anderson's education and employment history were not mitigating factors, but instead should have enabled her to appreciate the wrongfulness of her acts. It noted evidence of her good character in the form of reference letters, but determined it was not a significant mitigating factor. The court found a mitigator in Anderson's lack of criminal history. It considered Anderson's cooperation and remorse, but found her remorse attributable to being apprehended, rather than regret for her conduct; Anderson was still attempting to deflect blame from herself to a roommate, rather than fully accepting responsibility for her actions.

2.    Nature of the Offense and the Character of the Offender

Ind. Appellate Rule 7(B) empowers us to independently review and revise sentences authorized by statue if, after due consideration, we find the trial court's decision inappropriate in light of the nature of the offense and the character of the offender. *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007). The "nature of offense" compares the defendant's actions with the required showing to sustain a conviction under the charged offense, *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008), while the "character of the offender" permits for a broader consideration of the defendant's character. *Douglas v. State*, 878

---

[4] Anderson claims the court should have found a mitigator in her mental illness, but she did not assert this mitigator at the sentencing hearing. *See Koch v. State*, 952 N.E.2d 359, 374-75 (Ind. Ct. App. 2011) (waiving mitigator that had not been raised at sentencing).

5

N.E.2d 873, 881 (Ind. Ct. App. 2007). An appellant bears the burden of showing both prongs of the inquiry favor revision of her sentence. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

Anderson argues on appeal only the "character" prong and not the "nature of offense" prong. She has therefore waived any "nature of the offense" argument. *See Day v. State*, 898 N.E.2d 471, 472 (Ind. Ct. App. 2008). Waiver notwithstanding, Anderson's argument fails.

In reviewing the first prong of the inquiry, Anderson's conduct clearly exceeds the elements necessary under the charged offenses. Anderson was convicted of criminal mischief, which required the State to prove she recklessly, knowingly, or intentionally damaged the property of LAEK, LLC and Lynn Scrogham, without consent and caused pecuniary loss of at least $2,500.00. *See* Ind. Code § 35-43-1-2. Anderson was aware of the state of the property, as she went there to feed the cats. Neither landlord consented to Anderson's method of housing and maintaining the cats. Anderson caused $45,000 damage to the property of LAEK, LLC, and $13,358.11 in damage to the property of Lynn Scrogham.

Anderson's convictions of animal cruelty required the State to prove that Anderson recklessly, knowingly, or intentionally abandoned or neglected an animal by restraining it in a manner that seriously endangered the animal's life or health. *See* Ind. Code § 35-46-3-7. Anderson and her roommate resided at the Elmer Street property in 2006, but left the property around 2010 due to its dilapidated state. They left upwards of eighty-five cats in that dwelling with inadequate nourishment. The air quality test showed ammonia levels four

6

times higher than normally expected for a living space. Anderson kept upwards of thirty-seven dead cats in her refrigerators and freezers. As a consequence of Anderson's actions another 103 cats had to be euthanized. Anderson's conduct far exceeded the necessary showing under these counts, and permitted an enhanced sentence.

As to Anderson's character, she knew the state of affairs in the two properties and ignored the problem. Despite her education and occupation in the mental health profession, Anderson exhibited a lack of concern for the well-being of the cats. Nor did she exhibit concern for the welfare of her neighbors when she permitted the Elmer Street property to become an environmental hazard.

We cannot find Anderson's sentence inappropriate based on her offense or character.

## CONCLUSION

Anderson has not demonstrated the trial court abused its discretion in its consideration of mitigating factors. Additionally, we decline to exercise our authority to revise a sentence under App. R. 7(B) as Anderson's sentence cannot be said to be inappropriate in light of her character and the nature of her offense.

Affirmed.

BAKER, J., and MATHIAS, J., concur.