**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 19 2013, 5:38 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ROBERT D. WICKENS**
Wickens & Wickens, LLC
Greensburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

WALDO LYNN JONES, JR., )
)
    Appellant-Defendant, )
)
       vs. )    No. 16A04-1301-CR-12
)
STATE OF INDIANA, )
)
    Appellee-Plaintiff. )

APPEAL FROM THE DECATUR SUPERIOR COURT
The Honorable Matthew D. Bailey, Judge
Cause No. 16D01-1106-FA-308

**August 19, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Waldo Jones, Jr., appeals his sixty-year executed sentence for murder. We affirm.

**Issue**

The sole issue before the court is whether Jones's sentence is inappropriate.

**Facts**

The evening of June 2, 2011, Jones and his girlfriend, Tasha Parsons, woke up Parsons's twelve-year-old son, D.P., because they believed that D.P. had hidden Jones's illegally obtained prescription drugs. Jones had been living with Parsons for approximately a year and was helping take care of Parsons's three children. Both Jones and Parsons began to viciously beat D.P. in order to compel him to admit where the drugs were. Over the course of twelve hours from that night into the next day, June 3, 2011, D.P. was repeatedly beaten and tortured:

> . . . . [A] cooler was used to pound [D.P.]'s head into the floor. A coffee table was used to strike [D.P.]'s head. [D.P.] was kicked and stomped and punched. He was hit with a belt. He was put in the cellar. His head was submerged in bath water at [least] three or four times. His head was held under running water. He was again kicked and burned with cigarettes.

Tr. p. 86.

Parsons's two other children, who were seven and eight years old at the time, were in the household during the beating. At one point, the eight-year-old child woke up from a nap, looked up from underneath the covers, and saw D.P.'s face covered in blood. Jones left the residence on June 3, 2011, and spoke with a friend, Kristi Schofner, about D.P.'s beating; Schofner called the police.

2

Officers from the Greensburg Police Department and the Indiana State Police along with emergency personnel were dispatched to Parsons's house and found D.P. dead. Parsons and her two other children were still in the house. D.P. had injuries over ninety percent of his body, and the Marion County Coroner later determined that the cause of death was from "multiple blunt force traumatic injuries from head to toe with partial thickness thermal burns to the face." Id. at 43. The officers observed blood in various places inside the house. Officers transported Parsons to the Greensburg Police Station for questioning and, after locating Jones, transported him, too. Jones indicated that Parsons was the one who beat D.P.; he alluded to some participation but then retracted the statements. During Parsons's initial interview, she indicated that Jones was not involved in the death of D.P.; however, during the second interview on June 4, 2011, Parsons admitted that she and Jones beat D.P. for a period of twelve hours because they believed that D.P. had hidden some pills.

Jones was initially charged with Class A felony neglect of a dependent. The State amended the charges to include murder and to seek a sentence of life without parole ("LWOP"). On October 11, 2012, Jones entered a conditional guilty plea agreement where he pled guilty to murder, and the State dismissed the Class A felony neglect of a dependent charge and the LWOP enhancement. The court sentenced Jones to sixty years executed. Jones now appeals.

## Analysis

We examine whether Jones's sixty-year executed sentence is inappropriate under Indiana Appellate Rule 7(B) in light of his character and the nature of the offense. Jones

3

claims that his sentence should include ten years suspended to probation. He makes arguments to his character, but provides no claims to the nature of the offense and, therefore, waives the argument. See Anderson v. State, 989 N.E.2d 823 (Ind. Ct. App. 2013). Despite his waiver, we will address his claim.

Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest— the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

4

In regard to his character, Jones claims that a lesser sentence is warranted because of his guilty plea and expression of remorse for his actions. We disagree. Jones's guilty plea was not significant because he waited until three weeks before trial to plead guilty and benefited with the dismissal of the Class A felony neglect of a dependent charge and the LWOP enhancement. Further, Jones has had prior convictions related to substance abuse, an area that played a significant role in the current egregious offense. He had previous opportunities to address his substance abuse problem, but failed to take any actions. Jones's additional argument that with probation, he will have a longer period of supervision to "better ensure that [he] is not a threat to society and provide a smoother transition . . . to society," is irrelevant to this analysis. Appellant's Br. p. 8.

The court evaluated several factors to the nature of the offense, an area Jones failed to argue. The most significant aggravator was "the harm, injury, loss or damage suffered by the victim . . . [which] was significant and greater than the elements necessary to prove the commission of the offense." Tr. p. 85. The brutal and heinous torture of D.P. was committed in D.P.'s own home, a place where a child should feel safe, and in the presence of other children. Further, Jones was in a position of care, custody, or control of D.P. when he committed the crime.

## Conclusion

Jones's character and the egregious nature of the offense were sufficient to warrant his sentence. We affirm.

Affirmed.

KIRSCH, J., and VAIDIK, J., concur.

5