**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 29 2014, 10:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MATTHEW J. McGOVERN**
Special Public Defender
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHARLES M. BARLOW, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 22A01-1402-CR-63 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE FLOYD SUPERIOR COURT
The Honorable Susan L. Orth, Judge
Cause No. 22D01-1210-FC-2495

**September 29, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Pursuant to a plea agreement, Charles M. Barlow pleaded guilty to one count of Class B felony causing death when operating a vehicle with an alcohol concentration equivalent ("ACE") of at least .15 or more[1] and to three counts of Class C felony reckless homicide,[2] and Barlow admitted to habitual offender status.[3] Thereafter, the trial court sentenced Barlow to a total aggregate sentence of forty-four years, all to be executed. Barlow appeals and asserts that his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On the night of October 29, 2012, Barlow was driving on State Road 111 with three passengers – his fiancée, Laura Weigand ("Weigand"), Michael Roby, and Tara Hirsekorn. The four were on their way to a casino, and Barlow was intoxicated. While driving over 80 miles per hour, which was in excess of the speed limit, Barlow crossed the center line and hit an oncoming vehicle, instantly killing that driver. Because of the crash, Barlow's vehicle was consumed with fire, and although he attempted to free his passengers, all three of them died. Barlow admitted to an investigating officer that night that he had consumed alcohol prior to the crash. At the time of testing, Barlow's blood alcohol content was .18.

---

[1] *See* Ind. Code § 9-30-5-5(b)(1). We note that, effective July 1, 2014, a new version was enacted of each of the statutes under which Barlow was convicted. Because Barlow committed his offenses in October 2012, we will apply the statutes in effect at that time.

[2] *See* Ind. Code § 35-42-1-5.

[3] *See* Ind. Code § 35-50-2-8.

2

The State charged Barlow the next day, but following some amendments and renumbering of charges, the State ultimately charged Barlow with nine counts: Counts 1 through 4 charged Barlow with Class B felony causing death while operating a vehicle with an ACE of .15 or more; Counts 5 through 8 charged him with Class C felony reckless homicide; and Count 9 alleged that Barlow was an habitual offender.

In December 2013, the parties appeared for a change of plea hearing, at which the trial court was presented with a plea agreement that Barlow had signed. Barlow pleaded guilty to Count 1, relative to the death of the oncoming driver, and guilty to Counts 6, 7, and 8, relative to the death of his three passengers. He also admitted to habitual offender status. The plea agreement reflected a sentencing cap of thirty-four years for Counts 1, 6, 7, and 8, collectively, and a ten-year enhancement for Count 9, for a total possible sentence of forty-four years. *Appellant's App.* at 74-75. The State agreed to dismiss the remaining charges. Following a hearing, the trial court took the matter under advisement.

At the subsequent sentencing hearing, Barlow testified and expressed remorse for his decision that day to drink and drive. His mother testified as well, noting the frequent physical caretaking assistance he provided to her. For the defense, victims' family members testified or had their written statements read into evidence. When imposing sentence, the trial court identified as an aggravator Barlow's criminal history, consisting of at least four convictions in a ten-year period, including burglary, theft, and possession of forged instruments, as well as a probation revocation. The trial court found it particularly "significant" that in 2004 Barlow was sentenced for operating under the influence of alcohol or drugs, which the trial court opined, "should've been a wake-up call" to Barlow.

3

*Tr*. at 94. The trial court observed that Barlow had the opportunity after that conviction to address his alcohol problems, but he did essentially little to nothing in that regard, and the trial court found that to be an aggravating circumstance. The trial court determined that Barlow's criminal history reflected an inability or unwillingness to conform his behavior to the requirements of the law and a disdain for court authority.

The trial court identified as a mitigating factor that Barlow pleaded guilty, saving the families "the heartache" of going through the stress of trial and hearing details of how their loved ones died. *Id*. at 95. The trial court also identified as mitigating that Barlow's childhood and upbringing were "awful," but that even faced with that adversity, Barlow remained employed and obtained his GED. *Id*. at 94. Lastly, the trial court identified as a mitigating factor that extended incarceration would result in hardship on his mother and aunt, who both were in poor physical health.

The trial court determined that the aggravators outweighed the mitigators and sentenced Barlow to ten years for Count 1, Class B causing death while operating a vehicle with an ACE of .15 or more, and to eight years for each of the Counts 6 through 8, Class C felony reckless homicide, ordering that Counts 6 through 8 be served consecutive to each other and to Count 1. The trial court enhanced Count 1 by ten years based on Barlow's habitual offender status, for a total aggregate sentence of forty-four years, all executed. Barlow now appeals.

## DISCUSSION AND DECISION

Barlow pleaded guilty to one Class B felony and three Class C felonies, and he admitted to being an habitual offender. The sentencing range for a Class B felony is

4

between six and twenty years, and the trial court sentenced him to the advisory ten years. Ind. Code § 35-50-2-5. The sentencing range for a Class C felony is between two and eight years, and the trial court sentenced Barlow to the maximum eight years on each of the three Class C felony convictions. Ind. Code § 35-50-2-6. A defendant with habitual offender status faces sentence enhancement of the underlying felony conviction with the highest imposed sentence. Ind. Code § 35-50-2-8. Although Barlow faced more than forty-four years of incarceration, the State agreed to cap his sentence at that and to dismiss three Class B felonies and one Class C felony. Barlow agreed to this arrangement.

Barlow now contends that his forty-four-year sentence is inappropriate.[4] Appellate courts have the constitutional authority to revise a sentence if, after consideration of the trial court's decision, the court concludes the sentence is inappropriate in light of the nature of the offense and character of the offender. Ind. Appellate Rule 7(B); *Ricci v. State*, 894 N.E.2d 1089, 1094 (Ind. Ct. App. 2008), *trans. denied*. The reviewing court "must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Stewart*

---

[4] We note that not every sentence that is the product of a plea agreement is subject to Rule 7(B) review; only if the trial court is exercising discretion in imposing sentence may a defendant then contest on appeal the merits of that discretion on the grounds that the sentence is inappropriate. *Hole v. State*, 851 N.E.2d 302, 304 (Ind. 2006). Here, where the plea agreement provided for a sentencing cap, the trial court was required to exercise discretion in deciding whether to impose the maximum sentence allowed by the cap, or something less. Therefore, Barlow did not waive his right to contest the merits of that discretion on grounds that his sentence is inappropriate in light of the nature of the offense and the character of the offender. *Miles v. State*, 889 N.E.2d 295, 296 (Ind. 2008) (defendant did not waive appellate sentence review under invited error doctrine where defense agreed to sixty-five year cap and he was sentenced to sixty-five years); *Childress v. State*, 848 N.E.2d 1073, 1078-79 (Ind. 2006) (defendant may challenge appropriateness of sentence imposed under plea agreement that has sentencing cap or range).

*v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). Further, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts . . . but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). A defendant bears the burden of showing both prongs of the inquiry favor revision of his or her sentence. *Anderson v. State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013) (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)), *trans. denied*. In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is inappropriate. *Former v. State,* 876 N.E.2d 340, 344 (Ind. Ct. App. 2007) (emphasis in original).

When a defendant requests appellate review and revision of his sentence, we have the power to affirm, reduce, or increase the sentence. *Akard v. State,* 937 N.E.2d 811, 813 (Ind. 2010). Here, Barlow asks us to revise his sentence to impose fifteen years on Count 1 (instead of ten) and order that the eight-year sentences on Counts 6, 7, and 8 be served concurrent to each other and concurrent to Count 1. Barlow does not challenge the ten-year enhancement for being an habitual offender. Rather, he proposes that the fifteen-year sentence on Count 1 be enhanced by ten years for habitual offender status, resulting in an aggregate sentence of twenty-five years.

Barlow urges us to find that his character warrants a revision to his sentence. He reminds us that "[t]he character of a defendant is found in what this Court learns of the defendant's life and conduct." *Appellant's Br*. at 7 (citing *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). When questioned about his childhood, Barlow shared that he

6

met his father for the first time when he was a young teenager. Shortly thereafter, Barlow moved in with his father, who not only introduced Barlow to alcohol at age fourteen, but also regularly abused him. Barlow described that his father "wash[ed] his hands of me" and eventually abandoned Barlow into the foster care system. *Tr.* at 31. Barlow lived in many different foster homes and attended more than a dozen schools. His use of alcohol continued and escalated. Barlow believed that his mother was dead based on what his father had told him, but she was not, and when he was thirty-one years old, Barlow reconnected with her. Barlow testified that he had been dating Weigand for a number of years, and he credited her with guiding him to be a better and more responsible person. Barlow's mother, who suffered from a variety of physical ailments, testified that Barlow and Weigand cared for her on a regular basis. Those factors did not go unnoticed by the trial court.

It recognized that Barlow endured an "awful" childhood and that, despite those hardships, Barlow obtained his GED and remained consistently employed. *Id.* at 95. It advised Barlow, however, that his terrible childhood was not an excuse and that he had been given opportunities to address his alcoholism, but failed to do so. Barlow's criminal history included a 2004 conviction for driving a vehicle under the influence of alcohol or drugs, which the trial court told Barlow "should've been a wake-up call" to him to seek help. *Id.* at 94. By Barlow's admission, he attended only a limited number of Alcoholics Anonymous meetings and never obtained a sponsor. The court advised, "[E]ven with these wake-up calls with arrests and convictions . . . you don't seek treatment on your own." *Id.* at 94. The trial court reviewed his criminal history, consisting of four convictions and a

probation violation in a ten-year period and determined that it showed a disdain for court authority.

Barlow urges that his sincere remorse should mediate the length of his sentence. We acknowledge that at the sentencing hearing Barlow repeatedly expressed his sorrow to the victims' families for the pain he caused. He acknowledged that it was his poor decision to drink and drive, and there was no excuse for it. The trial court's remarks indicated that it appreciated Barlow's statements of remorse but noted that other aspects of Barlow's testimony tended to indicate an attempt to shift the blame or dilute the genuineness of the remorse, for instances when Barlow stated that someone else in his car wanted to get to the casino, perhaps implying he was hurrying for that reason. The trial court was also troubled by Barlow's statements that he only crossed the yellow line by few inches and that an oncoming car did not have its lights on and, thereafter, Barlow swerved and overcorrected. The trial court told Barlow that it was not an "accident" that caused four people to die, but rather a choice that he made: "You chose to drink, uh, and drank a lot before getting behind that wheel." *Id*. at 99. Barlow has not persuaded us that his character warrants a revision of his sentence of forty-four years, which fell within the parameters of the plea agreement.

With regard to the nature of the offense, Barlow recognizes that "this is a tragic case" involving the loss of four lives "in a senseless accident." *Appellant's Br*. at 5, 10. He maintains, however, that he expressed profound remorse and did not commit the offenses with any malice or callousness. Therefore, he asserts, the nature of the offense does not warrant the maximum sentence under the plea. We disagree. Barlow was aware that for many years he struggled with alcohol abuse. Nevertheless, he got behind the wheel

8

after consuming quantities of alcohol sufficient for him to test after the crash at .18 BAC. Not only did Barlow decide to drive, he also carried three passengers in the vehicle with him. He drove at or above 80 miles per hour on State Road 111, late at night. He crossed the yellow line and killed the oncoming driver. Then Barlow's car was consumed with fire, and his three passengers died. Nothing about the nature of the offense suggests that the forty-four-year sentence, which was within the range of the plea agreement's terms, was inappropriate.

Affirmed.

BAKER, J., and ROBB, J., concur.