## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 23 2019, 6:42 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John Andrew Goodridge
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Archie Lee Parker, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | December 23, 2019 <br><br> Court of Appeals Case No. 19A-CR-1658 <br><br> Appeal from the Vanderburgh Superior Court <br><br> The Honorable Robert J. Pigman, Judge <br><br> Trial Court Cause No. 82D03-1511-F5-7252 |

**Altice, Judge.**

## Case Summary

[1] A jury found Archie Lee Parker guilty of aggravated battery as a Level 3 felony, and he admitted to being a habitual offender. The trial court sentenced Parker to ten years for the Level 3 felony and enhanced such sentence by ten years for his habitual offender status. On appeal, Parker argues that his sentence is inappropriate.

[2] We affirm.

## Facts & Procedural History

[3] Allison Skelton and Raelene Stinson were neighbors. John Jackson was Skelton's boyfriend and the father of one of Skelton's children, and Parker was Stinson's boyfriend. In early November 2015, Jackson asked Parker to move Parker's broken-down vehicle that had been parked in front of Skelton's residence for months to another location because it was impacting Skelton's and his ability to park near Skelton's home. Parker indicated that "he was fine with that" and that it would be "no problem." *Transcript Vol. II* at 20. A couple hours later, Parker was yelling obscenities and stating that he would not move his vehicle. Parker left for a short time, and when he returned, he continued screaming profanities and saying that he was going to kill Skelton, Jackson, and their children.

[4] Two weeks later, on November 23, 2015, Jackson was taking trash out the back door at Skelton's house when Parker approached him and said, "I got you now," and then Jackson felt a punch or touch "like somebody pinched [him]"

below his left chest. *Id.* at 49. Jackson threw two punches to gain separation from Parker. Jackson did not feel right and then observed that his shirt was ripped and that there was "trickling blood." *Id.* He picked up the trashcan and threw it at Parker, who appeared to be holding something "shiny." *Id.* at 51.

[5] Skelton was on her way toward the back door when she heard commotion outside. When she looked through the kitchen window, she saw Jackson coming toward the house and observed that there was blood on his shirt. Skelton ran outside and saw Parker holding something and watched as Jackson threw the trashcan at him. When Parker saw Skelton, he ran from the scene. Skelton helped Jackson into the house and called 911. She helped Jackson apply pressure to his wound until emergency personnel arrived.

[6] On November 24, 2015, the State charged Parker with Count I, Level 5 felony battery by means of a deadly weapon. On February 1, 2016, the State filed a habitual offender enhancement. On February 11, 2016, the State charged Parker with Count II, Level 3 felony aggravated battery and Count III, Level 5 felony bribery.[1] A two-day jury trial commenced on February 28, 2019. The jury was unable to reach a verdict on Count I and rendered a guilty verdict on Count II and a not guilty verdict on Count III. On June 3, 2019, Parker pled

---

[1] The bribery charge stemmed from an encounter in August 2017 when Parker approached Jackson and asked if he could "offer . . . some type of money and we make this all go away – make this disappear." *Id.* at 52.

guilty to the habitual offender enhancement in exchange for dismissal of Count I and four counts under another cause.

[7] The trial court held a sentencing hearing on June 18, 2019. The trial court identified Parker's criminal history and the circumstances of the offense as aggravating circumstances and found no mitigating factors. The court sentenced Parker to ten years for aggravated battery enhanced by ten years for Parker's status as a habitual offender. Parker now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

[8] We may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find the sentence inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id*. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id*. at 1224. Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples

of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). The burden is on the defendant to persuade us his sentence is inappropriate in light of *both* the nature of the offense and his character. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006) (emphasis supplied).

[9] In order to assess the appropriateness of a sentence, we first look to the statutory range established for the classification of the relevant offense. Parker was convicted of a Level 3 felony, the sentencing range for which is three to sixteen years, with an advisory sentence of nine years. Ind. Code § 35-50-2-5.

[10] In challenging his sentence, Parker advances no argument as to how the nature of the offense makes his sentence inappropriate. Parker has therefore waived any appellate consideration of the nature of the offense. *See Anderson v. State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013), *trans. denied*. Waiver notwithstanding, the circumstances of the offense are not deserving of a lesser sentence. Parker instigated an unprovoked attack on his unsuspecting victim. Indeed, Johnson suffered a slash-type wound below his left chest that required thirteen staples. As the trial court found, the circumstances "could easily have gone very badly . . . given the nature of the wound and how it was inflicted." *Transcript Vol. II* at 225.

[11] With regard to his character, Parker notes that prior to the instant offense, his last felony conviction was in 2011, and before that in 2007 and 1999. He asserts that such demonstrates that he "was able to live in society for considerable amounts of time without committing felony offenses." *Appellant's*

*Brief* at 12. He argues that the staleness of his criminal history, in conjunction with his age (55 years old), his health, and his ties with his family, render his twenty-year sentence inappropriate.

[12] In considering Parker's character, we note that his criminal history includes felony convictions for dealing in cocaine, along with numerous misdemeanor convictions for dealing in marijuana, battery/domestic battery, residential entry, invasion of privacy, and criminal mischief, among others. Some of the time periods Parker claims to have led a law-abiding life can be explained by the fact that Parker was incarcerated. Contrary to Parker's claim, his criminal history shows that he has consistently been committing crimes since 1994. The record also discloses that Parker has a problem with alcohol and other illegal substances. Although Parker admitted to the habitual offender enhancement, such was in exchange for dismissal of five other charges. His decision to admit to the habitual enhancement was likely a pragmatic decision.

[13] Parker has failed to show us anything about the nature of the offense or his character that would overcome the deference we give to the trial court's decision. In short, Parker has failed to establish that his twenty-year sentence is inappropriate.

[14] Judgment affirmed.

Robb, J. and Bradford, J., concur.