## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 21 2020, 9:39 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James A. Shoaf
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Bruce Giggy,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

January 21, 2020

Court of Appeals Case No.
19A-CR-1108

Appeal from the
Bartholomew Superior Court

The Honorable
James D. Worton, Judge

Trial Court Cause No.
03D01-1707-FC-3809

**Vaidik, Judge.**

# Case Summary

[1] Bruce Giggy pled guilty to three counts of Class C felony child molesting for fondling his nieces when they were younger, and the trial court imposed consecutive sentences totaling fourteen years and eight months, all to be served in the Indiana Department of Correction. Giggy now appeals, arguing that the trial court abused its discretion in sentencing him and that his sentence is inappropriate. We affirm.

# Facts and Procedural History

[2] In March 2017, C.P., who was twenty-six years old, and her sister S.P., who was eighteen years old, went to the Columbus Police Department to report that Giggy, their uncle, had fondled them when they were around nine or ten years old. They also reported that Giggy had fondled their cousin S.S., who was twenty-six years old.

[3] The police interviewed several people, including Giggy. During his interview, Giggy admitted inappropriately touching his nieces' exposed breasts and butts and exposing his erect penis (sometimes touching them with it) on multiple occasions when they spent the night at his house. Giggy explained that he didn't think his nieces were awake when it happened and that he did it because he was "intrigued" by their "growth and development" and "aroused by the sneaking around . . . late at night." Tr. p. 96. Giggy also talked about his granddaughter L.K., who at the time was fifteen years old. Giggy admitted

fondling L.K. and putting his penis on her hand while she slept when she was around six years old. *Id.* at 117-18; Appellant's App. Vol. II p. 26. Giggy said that several years after that, when L.K. was "thirteen maybe or fourteen" years old (2015-16), she had just taken a bath and was naked in a bedroom. Tr. p. 104. Unknown to L.K., Giggy watched her, thinking to himself that she was "really growing up" and "very pretty." *Id.* at 105.

[4] In July 2017, the State charged Giggy, who by then was sixty-one years old, with five counts of Class C felony child molesting based on fondling: two counts for C.P. (1999), one count for S.P. (2008-09), one count for S.S. (2000), and one count for L.K. (2008).

[5] In April 2018, the State and Giggy entered into a plea agreement under which Giggy pled guilty to three counts of Class C felony child molesting—one count for each niece (Counts 1, 2, and 4)—and the State dismissed the second count for C.P. (Count 3) and the count for L.K. (Count 5).[1] *Id.* at 5. Sentencing was left to the discretion of the trial court.

[6] At the sentencing hearing, several close friends and family members testified on Giggy's behalf. According to their testimonies, Giggy—who had coached girls volleyball at the middle-school and high-school levels and mentored youth through his church—had been involved in the lives of "thousands of young people," and what he did to his nieces was "far outside of his normal

---

[1] The State agreed not to pursue Count 5 at L.K. and her mother's request. Tr. pp. 68-69.

character." *Id.* at 27, 62. The victims then read their victim-impact statements. S.S. explained that she did not come forward earlier because she was "willing to put [her] own safety and needs below" the needs of Giggy's family "for a very long time." *Id.* at 80-81. Also, she said that she didn't think anyone would believe her, since Giggy was "known as this devoted Christian in the community." *Id.* at 81. S.S. said that she felt "immense" guilt for not coming forward sooner, because then she could have stopped it from happening to her cousins. *Id.* Next, C.P. testified that Giggy and his wife "were almost like second parents" to her and that it was "hard to look back on [her] childhood and think of anything other than . . . these crimes." *Id.* at 83. C.P. said that she felt guilt for not coming forward earlier, because then she "could have saved" her younger sister S.P. *Id.* at 84. However, C.P. said that the "most damaging" part of the abuse was that it occurred at the hands of someone she "loved and trusted." *Id.* C.P. talked about the battles they will have to face for "the rest of [their] lives" due to Giggy molesting them in their sleep when they didn't have "a chance to fight back." *Id.* at 85. Finally, S.P. testified that Giggy put forth a "carefully constructed mirage" that he was "trustworthy," "kind," and a "great Christian man, with a very happy family" to cover up the molestations. *Id.* at 86. S.P. explained that for years she believed she was the only victim and that she did not come forward earlier because she thought that nobody would believe her. She concluded that "the hardest part [was] looking back on childhood memories that relate to [Giggy]. Things that as a child, I didn't see anything unusual about, but now I see them clearly as sickening, predatory tactics." *Id.* at 87.

[7] Defense counsel conceded that there were two aggravators: the victims were less than twelve years old at the time of the molestations and Giggy violated a position of trust. *Id.* at 131 ("There's absolutely no way that any sane individual could say that those aggravators aren't proper."). Defense counsel then argued that there were several mitigators, including that Giggy had no criminal history until this case and that the crimes were the result of circumstances unlikely to recur. Defense counsel asked the trial court to sentence Giggy to the advisory term of four years on each count, to be served consecutively, and to "divide that twelve years" between incarceration, home detention, and probation. *Id.* at 137.

[8] The trial court identified three aggravators: (1) the victims were less than twelve years old at the time of the molestations; (2) Giggy was in a position of trust with the victims and betrayed that trust, which was "a very significant aggravator"; and (3) the harm, injury, loss, or damage suffered by the victims "was significant and greater than the elements necessary to prove the commission of the offense[s]," as the "emotional scars" relayed by the victims in their victim-impact statements are "very significant." *Id.* at 144. The court identified one mitigator: Giggy did not have any criminal convictions until this case.[2] The court sentenced Giggy to six years and eight months on Count 1,

---

[2] Giggy argues that the trial court "failed to make a statement in support of its findings." Appellant's Br. p. 17. While the trial court's sentencing order just lists the aggravators and mitigator it found, it explained these findings at the sentencing hearing. This is enough. *See Anderson v. State*, 989 N.E.2d 823, 826 (Ind. Ct. App. 2013) ("A trial court's consideration of factors may be evidenced in either the written order or in an oral sentencing statement."), *trans. denied*.

four years on Count 2, and four years on Count 4. The court ordered the sentences to be served consecutively, for a total sentence of fourteen years and eight months, all to be served in the DOC.

[9] Giggy now appeals his sentence.

# Discussion and Decision

## I. Abuse of Discretion

[10] Giggy contends that the trial court abused its discretion by finding an improper aggravator and failing to find two mitigators. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

[11] Giggy first argues that the trial court erred by finding as an aggravator that the harm, injury, loss, or damage suffered by the victims was significant and greater than the elements necessary to prove the molestations because the record "is void of any facts supporting its finding that the victims in this case suffered harm, injury, loss, or damage more significant or greater than anticipated by the statute." Appellant's Br. p. 20. At sentencing, the victims read victim-impact statements in which they detailed the effects the molestations have had on them. They spoke at length about how their uncle gained their trust and then abused it. They spoke about the guilt they carried around for not coming forward sooner, because it might have prevented the others from being

molested. And they spoke about keeping the abuse secret for so long because they didn't want to break apart the family and because they didn't think anyone would believe them due to Giggy being a Christian. Furthermore, as the State points out, Giggy admitted to more molestations than the victims remembered, as he only molested them when he thought they were asleep. The trial court did not abuse its discretion in finding this aggravator.

[12] Giggy next argues that the trial court erred by not finding as mitigators that the crimes were the result of circumstances unlikely to recur and that he would respond affirmatively to probation and short-term imprisonment. Giggy asserts that the circumstances are unlikely to recur because it is doubtful that young family members will be left in his care again and because it has been "over ten (10) years since the last crime occurred." Appellant's Br. p. 17. He asserts that he would respond well to probation and short-term imprisonment based on "his character." *Id.* at 18. According to the record, Giggy spent years molesting his family members and creating the image that he was a good and trustworthy person so that he could continue the molestations. While Giggy admitted to the molestations, it was only years later when the victims went to the police. Although Giggy did not admit to any recent molestations, he did admit to watching L.K. when she was naked as recently as 2016. Moreover, at the time of sentencing, L.K.'s mother (Giggy's daughter) was pregnant with her fifth child. Thus, it is possible that Giggy could have access to more children. Giggy has failed to show that these mitigators are both significant and clearly

supported by the record.  *See Anglemyer*, 868 N.E.2d at 493.  The trial court did not abuse its discretion in sentencing Giggy.

## II. Inappropriate Sentence

Giggy also contends that his sentence of fourteen years and eight months, all to be served in the DOC, is inappropriate and asks us to "modify [it] to include a suspended portion as a community correction placement."  Appellant's Br. p. 27.  Indiana Appellate Rule 7(B) provides that an appellate court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  "Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case."  *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014) (citing *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008)).  Because we generally defer to the judgment of trial courts in sentencing matters, defendants have the burden of persuading us that their sentences are inappropriate.  *Schaaf v. State*, 54 N.E.3d 1041, 1044-45 (Ind. Ct. App. 2016).

The sentencing range for a Class C felony is two to eight years, with an advisory sentence of four years.  Ind. Code § 35-50-2-6(a).  As such, Giggy was facing as many as twenty-four years in prison.  The trial court sentenced him to six years and eight months on Count 1 and the advisory sentence of four years

on Counts 2 and 4. The court ordered the sentences to be served consecutively, for a total sentence of fourteen years and eight months to be served in the DOC.

[15] There is nothing about Giggy's offenses that requires a revision of his sentence. Giggy admitted molesting his nieces on several occasions between 1999 and 2008. Giggy gained the trust of his nieces, becoming their favorite uncle and like a second parent to them. He then molested his nieces when he thought they were asleep, rubbing their exposed breasts and butts and placing his erect penis on them. His nieces were awake on some of these occasions but kept the abuse secret for many years.

[16] There are indeed redeeming aspects to Giggy's character. He did not have any convictions until this case, he was a college graduate who was gainfully employed, he admitted to the molestations during his first interview with the police, and he pled guilty, sparing his nieces (and his family) the trauma of going through a trial. In addition, his close friends and children spoke very fondly of him, claiming that his actions were totally out of character for him. The reason this appeared out of character for Giggy is because he created the impression that he was a good person who could be trusted. Meanwhile, behind closed doors at night, he subjected his nieces to a series of molestations because he liked the thrill of sneaking around and was "intrigued" by their "growth and development." Even though the molestations Giggy admitted to occurred between 1999 and 2008, he also admitted watching his naked granddaughter as recently as 2016. Giggy has failed to persuade us that his

sentence of fourteen years and eight months, all served in the DOC, is inappropriate.

[17]   Affirmed.

Najam, J., and Tavitas, J., concur.