## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 27 2020, 8:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer A. Joas
Madison, Indiana

ATTORNEYS FOR APPELLEE

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robyn Johnson,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

May 27, 2020

Court of Appeals Case No.
19A-CR-1406

Appeal from the
Switzerland Circuit Court

The Honorable
W. Gregory Coy, Judge

Trial Court Cause No.
78C01-1808-F1-344

**Kirsch, Judge.**

[1] The State charged Robyn Johnson ("Johnson") with neglect of a dependent[1] as a Level 1 felony. Johnson and the State entered a plea agreement, and Johnson reserved the right to appeal her sentence. Following her guilty plea, Johnson was sentenced to an aggregate sentence of twenty-five years with five years suspended to probation and the remaining twenty years executed in the Department of Correction ("DOC"). Contending that her sentence is inappropriate in light of the nature of the offense and her character, Johnson now appeals.

[2] We affirm.

## Facts and Procedural History

[3] Johnson is the mother of eight children. *Tr. Vol. II* at 11. C.B.J. was one of her children. *Id.* at 33, 46. He was born on March 3, 2015 with a twisted bowel and required multiple bowel resection surgeries. *Id.* at 46, 48-49; *Def.'s Ex. 3* at 92-94. As a result of these surgeries, C.B.J. suffered from malabsorption, required hydration and long-term care, and underwent additional surgeries and hospitalizations. *Tr. Vol. II* at 49, 55, 57; *Def.'s Ex. 3* at 92-93.

[4] In April of 2017, C.B.J. underwent surgery at Cincinnati Children's Hospital ("the Hospital") and was hospitalized for nine weeks due to complications arising from that surgery. *Tr. Vol. II* at 56. He was discharged on June 14, 2017

---

[1] *See* Ind. Code § 35-46-1-4.

and returned home for two days. *Id.* at 61. On June 16, 2017, his mother took him back to the Hospital due to problems with his gastro-intestinal feeding tube. *Id.* at 61-63. While C.B.J. was at the Hospital, Dr. Timothy Brenkert ("Dr. Brenkert"), an emergency room physician, wanted to do bloodwork on C.B.J. out of concerns related to dehydration and a possible infection. *Id.* at 66-67; *Def.'s Ex. 3* at 125.

[5]     C.B.J. was known as a "hard stick," and problems arose when nurses attempted to take blood from him. *Tr. Vol. II* at 67. C.B.J. was crying and writhing in pain throughout the procedure. *Id.* Finally, Hospital personnel succeeded in filling two vials with blood; however, one of the vials was coagulated and could not be used. *Id.* at 68. Hospital staff wanted to draw more blood from C.B.J. *Id.* Johnson, who had witnessed the entire procedure and was upset with their treatment of her son, decided that she was going to take C.B.J. home. *Id.* Johnson believed that C.B.J. was dehydrated because his feeding pump was turned off after his arrival at the Hospital, and she felt that she could rehydrate C.B.J. at home. *Id.* at 69, 135. She also expressed to Hospital personnel that she needed to leave the Hospital to attend to her other children and go to work and would not leave without C.B.J. *Def.'s Ex. 3* at 30.

[6]     Dr. Brenkert discussed C.B.J.'s discharge with Johnson. *Id.* at 177. At that time, Dr. Brenkert was unaware of the lab results from the vial of C.B.J.'s blood that was not coagulated. *Id.* at 179. When Dr. Brenkert learned of the blood test results, he was concerned with C.B.J.'s hydration levels and kidney function. *Id.* at 159-63. Combined with C.B.J.'s unmanaged heart rate, Dr.

Brenkert was concerned that C.B.J. had an infection, and he presented Johnson with an "Against Medical Advice" form ("A.M.A."). *Id.* at 164, 178-82. Handwritten on the A.M.A. form was "short gut syndrome with tachycardia, dehydration, death and kidney failure." *Def.'s Ex. 4 at 9.*

[7] Johnson signed the A.M.A. form and left the Hospital with C.B.J. at 5:40 a.m. *Tr. Vol. II* at 68-69, 154. At 5:51 a.m., another Hospital physician, Dr. David Vitale, contacted Johnson and informed her that C.B.J.'s vital signs and labs indicated life-threatening dehydration and a possible infection and that C.B.J. needed to be returned immediately or he would contact police. *Id.* at 153, 156, 169-70; *Def.'s Ex. 4* at 158. Johnson did not return C.B.J. to the Hospital. *Tr. Vol. II* at 70, 99. Instead, she called the Vevay Police Department to ask if she could be arrested for not returning C.B.J. to the Hospital. *Id.* at 108, 153. Her call was re-routed to the Switzerland County Sheriff's office. *Id.* at 153, 158-59, 161. She then continued driving home, arriving there at 7:33 a.m. *Id.* at 153.

[8] Upon her arrival at home, Johnson put C.B.J. to bed and reconnected his feeding tube to give him PediaLite. *Id.* at 72, 103. At 8:33 a.m., Dr. Annie Ferguson called from the Hospital to reiterate that C.B.J.'s blood work showed a possible infection and that C.B.J. needed to be returned to the Hospital immediately. *Id.* at 153, 160; *Def.'s Ex. 4* at 171. Johnson agreed to do so. *Def.'s Ex. 4* at 171.

[9] At 8:45 a.m., Johnson left her home to pick up her other children and returned at 9:09 a.m. *Tr. Vol. II* at 153. At 9:27 a.m., she began attempting to arrange

for an ambulance that could take C.B.J. back to the Hospital. *Id.* at 101, 153. Noticing that C.B.J.'s breathing had changed, she again called to request an ambulance. *Id.* at 73, 153. At 9:37 a.m., C.B.J. was in cardiac arrest, and Johnson and her boyfriend performed CPR on C.B.J. *Id.* at 73, 101, 153-54.

[10] C.B.J was flown to the Hospital where he was pronounced dead on June 17, 2017. *Id.* at 73. An autopsy determined the cause of C.B.J.'s death to be "severe dehydration complicating short gut syndrome with jejunostomy tube dependence due to small bowel resection with complications due to congenital intestinal malformation with midgut volvulus and the manner of death to be homicide (child neglect)." *Appellant's Conf. App. Vol. II* at 10.

[11] On August 29, 2018, the State charged Johnson with neglect of a dependent as a Level 1 felony. *Id.* at 7-8. On April 17, 2019, Johnson and the State entered a plea agreement by which Johnson pleaded guilty to the offense of neglect of a dependent as a Level 1 felony with a maximum sentence of thirty years and a minimum, nonsuspendible sentence of twenty years. *Id.* at 12-14. On that same day, the trial court took her guilty plea under advisement and scheduled a sentencing hearing for May 17, 2019. *Id.* at 5. At the sentencing hearing, the trial court heard the parties' presentations of evidence and arguments, considered Johnson's presentence investigation report ("PSI"), and imposed its sentence on Johnson. *Tr. Vol. II* at 7-186. Before sentencing Johnson, the trial court stated as follows:

> The Court does find that the mitigating factors outweigh the
> aggravating factors in this case and the plea agreement should be

accepted and the defendant sentenced accordingly. I would find that that means that the advisory sentence of 30 years, which is the maximum under the plea agreement, the sentence needs to be under that. I do find, this is not set out in here specifically, that this not a case where the Court is going to consider alternative sentencing, if at all. This is a Level 1 Felony and I believe it mentions in the pre-sentence that there was contact with community corrections or an effort to contact them and they did not respond. In my experience, and I was a lawyer [for] 20 and I've been up here about 10 1/2, I've not seen anyone on Class A or Level 1 doing it on detention. That doesn't mean they have or haven't done some other alternative but in my experience, that hasn't happened.

*Id.* at 185. The trial court then imposed an aggregate sentence of twenty-five years with five years suspended to probation and twenty years executed in the DOC, the minimum sentence provided in the plea agreement. *Id.* at 185-86; *Appellant's Conf. App. Vol. II* at 15-19. Johnson now appeals.

## Discussion and Decision

[12] Johnson contends that her sentence is inappropriate in light of the nature of her offense and her character. Under Indiana Appellate Rule 7(B), we may revise a sentence if, after due consideration of the trial court's decision, we find the sentence inappropriate considering the nature of the offense and the character of the offender. Whether a sentence is inappropriate turns on the culpability of the defendant, the severity of the crime, the damage done to others, and other factors that come to light in a given case. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). We defer to the trial court's decision, and our goal is to determine whether an appellant's sentence is inappropriate, not

whether some other sentence would be more appropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). The location where a sentence is to be served is an appropriate focus for our review and revise authority. *Biddinger v. State*, 868 N.E.2d 407, 414 (Ind. 2007). However, a defendant faces a rigorous burden convincing us that a given placement is inappropriate. *Fonner v. State*, 876 N.E.2d 340, 343 (Ind. Ct. App. 2007). In reviewing a sentence, we seek to leaven the outliers rather than to achieve a perceived correct result in each case. *Cardwell*, 895 N.E.2d at 1225.

[13] On appeal, Johnson requests that her sentence be reduced from twenty-five years to twenty years and that she be permitted to serve the sentence on home detention. We decline her request.

[14] The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). The sentencing range for a Level 1 felony is a fixed term of imprisonment between twenty and forty years, with the advisory sentence being thirty years. Ind. Code § 35-50-2-4(b). An addendum to Johnson's guilty plea agreement established additional sentencing parameters for the trial court to consider, with the advisory sentence for a Level 1 felony of thirty years as the maximum sentence and twenty years, nonsuspendible, as the minimum

sentence. Johnson received an aggregate sentence of twenty-five years with five years suspended to probation and the remaining twenty years executed in the DOC. Her sentence is less than the advisory sentence for a Level 1 felony and within the range established by the guilty plea. In fact, the executed time of twenty years in the DOC to which Johnson was sentenced is the minimum term of imprisonment for a Level 1 felony.

[15] The nature of the offense compares the defendant's actions with the required showing to sustain a conviction under the charged offense. *Cardwell*, 895 N.E.2d at 1224. When Johnson committed the offense, she ignored the repeated requests of medical personnel to keep two-year old C.B.J. at the Hospital and to return him after she removed him against medical advice. *Tr. Vol. II* at 68-69, 154-56, 169-70; *Def.'s Ex. 3* at 164, 178-82; *Def.'s Ex. 4* at 158. Instead of keeping C.B.J. at the Hospital to control and address his underlying medical condition, Johnson took C.B.J. home and contacted the Vevay Police Department along the way to inquire as to whether her conduct in taking C.B.J. from the Hospital could be considered criminal. *Tr. Vol. II* at 153, 158-59, 161. In pleading guilty to the offense, Johnson admitted to knowingly or intentionally putting C.B.J. in a situation that resulted in his death. *Tr. Vol. II* at 5; *Appellant's Conf. App. Vol. II* at 12-14. We acknowledge that Johnson felt she was trying to help C.B.J. by taking him home to rehydrate him outside of the Hospital setting. *Tr. Vol. II* at 69, 135. However, Johnson was keenly aware that C.B.J. could become critically ill in a "moment's notice" and that dehydration and the critical nature of his illness could quickly escalate. *Id.* at

92. In light of the severity of C.B.J.'s chronic medical condition and the urgent need for additional testing to properly assess his condition, we do not find her sentence to be inappropriate based on the nature of the offense.

[16] The character of the offender permits a broader consideration of the defendant's character. *Anderson v. State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013). The trial court reviewed Johnson's PSI, which revealed limited criminal history and her own extensive medical history. *Appellant's Conf. App. Vol. II* at 20-199; *Appellant's Conf. App. Vol. III* at 2-95. The trial court found Johnson's criminal history to be negligible and acknowledged the hardship that her incarceration would cause for her other children. *Appellant's Conf. App. Vol. II* at 15-16. It also found that Johnson showed remorse by pleading guilty and that her conviction was due to events that were unlikely to reoccur. *Id.* The trial court noted, based on the severity of the crime, that Johnson's situation was "not a case where the Court is going to consider alternative sentencing." *Tr. Vol. II* at 185. The trial court sentenced Johnson to a term of twenty-five years, with five years suspended to probation and the remaining twenty years executed in the DOC. *Appellant's Conf. App. Vol. II* at 16-17. Her sentence reflects the considerations applicable to her case, including the hardship caused by her incarceration, and the executed portion of the sentence is equivalent to the minimum sentence for her offense. Johnson's request to serve her sentence on home detention due to her extensive medical conditions and the hardship of incarceration on her other children, focuses on why home detention would be more appropriate than placement at the DOC and not why placement at the

DOC is inappropriate, which is not our prerogative under Appellate Rule 7(B). *Fonner*, 876 N.E.2d at 343-44. We cannot say that Johnson has shown "substantial virtuous traits or persistent examples of good character" such that reducing her sentence to twenty years served on home detention is warranted based on her character. *Stephenson*, 29 N.E.3d at 122. Therefore, in light of the nature of Johnson's offense and her character, we cannot say that her sentence is inappropriate.

[17] Affirmed.

Bailey, J., and Mathias, J., concur.